[No. D050449. Fourth Dist., Div. One. Jan. 14, 2008.]

JERRY McLEOD et al., Plaintiffs and Appellants, v.
VISTA UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

**COUNSEL**

Law Offices of Everett L. DeLano III, Everett L. DeLano III and M. Dare DeLano for Plaintiffs and Appellants.

Foley & Lardner, Kenneth S. Klein; Procopio, Cory, Hargreaves & Savitch, John C. Lemmo and A. Aiko Osugi for Defendant and Respondent.

OPINION

**McCONNELL, P. J.**—In November 2000 California voters approved Proposition 39, which is also referred to as the "Smaller Classes, Safer Schools, and Financial Accountability Act." (Prop. 39, as approved by voters, Gen. Elec. (Nov. 7, 2000).) "First, and most important, [Proposition 39] amended the state Constitution to create an exception to the 1 percent limit on ad valorem taxes on real property, and to reduce from two-thirds to 55 percent the number of voters required to approve any bonded indebtedness proposed to be incurred by a school district for the 'construction, reconstruction, rehabilitation, or replacement of school facilities.' " (*Ridgecrest Charter School v. Sierra Sands Unified School Dist.* (2005) 130 Cal.App.4th 986, 993 [30 Cal.Rptr.3d 648]; see Cal. Const., art. XIII A, § 1, subd. (b)(3).) A local measure submitted to voters under Proposition 39 must set forth certain "accountability requirements," including a list of the specific schools facilities projects to be funded, and a statement that the bond funds may be used only for those projects. (Cal. Const., art. XIII A, § 1, subd. (b)(3)(A), (B).)

The issue in this case is the applicable statute of limitations for a taxpayer waste action (Ed. Code, § 15284; Code Civ. Proc.,[1] § 526a) that challenges various aspects of a school district's successful local measure under which it is authorized to issue bonds for school construction. Under the circumstances here, we conclude the 60-day limitations period of the validation statutes applies (§§ 860, 863). Accordingly, we affirm a judgment of dismissal for the school district on the ground of untimeliness.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

It is undisputed that the Vista Unified School District's (District) schools and students have suffered from severe overcrowding. In March 2002, by a vote of approximately 67 percent, the District's voters approved a measure, Proposition O, which authorized it to issue and sell $140 million in general obligation bonds to fund the construction of new schools and to repair and renovate aging schools. The District intended to issue bonds four times over a several-year period.

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] We grant the McLeods' unopposed request for judicial notice dated June 1, 2007. We deny the McLeods' opposed request for judicial notice dated September 7, 2007, as the documents attached to it were generated after the trial here.

The voter materials listed numerous projects, which as relevant here included two new magnet high schools located on a single site with shared ancillary and sports facilities, two new "K-8" (kindergarten through eighth grade) schools and two new temporary schools.[3] Proposition O did not set forth a particular budget for any of the listed facilities.

As required by statute, Proposition O cautioned voters that "[a]pproval of this proposition does not guarantee that the proposed projects in the Vista Unified School District that are the subject of bonds under this proposition will be funded beyond the local revenues generated by this proposition. The school district's proposal for the projects may assume the receipt of matching state funds, which could be subject to appropriation by the Legislature or approval of a statewide bond measure." (See Ed. Code, § 15122.5.)

The District formed an independent citizens bond oversight committee (Oversight Committee), as required by statute, to oversee the expenditure of Proposition O bond funds and provide reports to the public on the District's compliance with the measure and Proposition 39. (Ed. Code, §§ 15278, 15280, 15282.)

In April 2002 the District approved the use of Proposition O funds for the purchase of 12 relocatable classrooms so a program called the Vista Focus Academy could be temporarily moved from an overcrowded school to a site the District already owned, pending the construction of new permanent schools. This work was completed and accepted in early 2003.

Ultimately, the District received approximately $111 million in matching funds from the state, which was $14 million less than anticipated. Further, after voters approved Proposition O the costs of land and construction increased more than the District reasonably could have anticipated. For instance, the cost of the new dual magnet high school site increased dramatically, the price of concrete doubled and the price of steel rose 30 percent. Additionally, the District incurred unanticipated costs to defend itself in lawsuits related to bond-funded projects.[4]

---

[3] The entire list in Proposition O was as follows: "1. Two New Magnet High Schools located on a single site with shared ancillary and sports facilities [¶] 2. Guajome Park Academy Expansion [¶] 3. New Continuation High School [¶] 4. New Middle School [¶] 5. Two New K-8 Schools [¶] 6. Four New Elementary Schools [¶] 7. Two New Temporary Schools [¶] 8. Environmental Mitigation of New Sites [¶] 9. Casita Multipurpose Building [¶] 10. Washington Multipurpose Building [¶] 11. Rancho Buena Vista High School Stadium [¶] 12. Improvements at Existing Schools [¶] 13. Modernization of Existing Schools [¶] 14. Educational Technology Infrastructure."

[4] We take judicial notice of unpublished opinions this court has issued which, respectively, pertain to environmental challenges to the site the District selected for the dual magnet high schools and related attorney fees issues. (*County of San Diego v. Vista Unified School Dist.*

Because of budgetary concerns, the District hired an experienced and respected national project management firm that specializes in the construction of school facilities. By February 2004 the consultant prepared a "Revised Bond Implementation Plan," which addressed required changes in the District's original plan. The District approved the revised plan, which scaled back the size of some projects, including the dual magnet high schools. Further, changing demographics since the passage of Proposition O and the construction of new elementary schools eliminated the need for the K-8 schools listed in Proposition O, and thus the District deleted them from its original plan.

Minutes from the Oversight Committee's February 17, 2004 meeting show that during a discussion on Proposition O funds, the District advised "that the schools that will not be built are the two K-8 schools and a portable school." The District's legal counsel advised the Oversight Committee that the list of projects in Proposition O "was not a guarantee that all schools on the list would be built."

At the February 26, 2004 meeting of the District's board of trustees (Board), the District discussed its revised plan and explained it was necessitated primarily by increased costs of the dual magnet high schools. The District explained the "magnet high school project is expected to exceed the original estimate by $25 million. In order to still fund this project, two K-8 schools and [a] temporary school will be eliminated from the [original] plan." The minutes from the meeting state it was the Oversight Committee's consensus that the District was "doing a good job" and was "extremely responsive" to the group.

At the Board's April 22, 2004 meeting, the District adopted a resolution of necessity for the acquisition of a site in the City of Oceanside near Highway 76 and North Melrose Drive for the dual magnet high schools. The Oversight Committee urged the Board to adopt the resolution. Jerry McLeod attended the meeting and opposed the resolution.

The Oversight Committee's May 2004 annual report stated: "During the past 12 months, the District has witnessed certain conditions which have caused the original facilities plan to seriously exceed its budget," and under the District's revised plan it would save "the costs previously anticipated to build two new K-8 schools." The report explained the "new plan assumes that the future [District] student population will decrease somewhat. A third party consultant . . . indicates that the student population should decrease by approximately 1,300 students by 2008. Consequently, the District projects

(Apr. 14, 2006, D045588) [nonpub. opn.]; *County of San Diego v. Vista Unified School Dist.* (Apr. 18, 2006, D046156) [nonpub. opn.].)

that fewer schools will be required than originally anticipated." The committee did not criticize the District's decision and found its use of bond funds complied with Proposition O and Proposition 39.

At an April 14, 2005 meeting, the Board voted against a proposal to return to taxpayers $24,278,118, the amount budgeted for the two new K-8 schools and one of the temporary schools identified in Proposition O, facilities the District eliminated from its plan. Jerry McLeod attended the meeting and expressed his view that Proposition O funds were "to be used for a list of specific projects voted on."

The Oversight Committee's May 2005 annual report stated the District "projects to see further, but less significant savings than originally projected in February 2004, related to not building two new K-8 schools as originally planned." The report also noted the Vista Focus Academy was one of several projects completed. The report concluded that during the previous year the District had "continued to successfully fulfill its promise to the community to construct new school facilities and to improve existing school facilities as identified in Proposition O. Although certain minor concerns, which are expressed in this report, do exist, after 3 years in progress the District's facilities construction program continues to move in a positive direction." The report did not complain about the Vista Focus Academy, the Board's action at the April 14, 2005 meeting, or the District's deletion of the K-8 schools and a temporary school from its original plan.

By the time the Oversight Committee issued its May 2005 annual report, McLeod was a member of the committee. He conceded he did not vote against any of the language in the report. The Oversight Committee's May 2006 report again complimented the District on "steady progress in terms of timing, and good management in terms of cost control efforts."

On May 16, 2006, more than 13 months after the Board voted against returning any Proposition O funds to the voters, Jerry McLeod sued the District for declaratory and injunctive relief.[5] The first amended complaint added Ann McLeod as a plaintiff. As authority for the action, the pleading cited Code of Civil Procedure section 526a, which generally authorizes a taxpayer waste action, and Education Code section 15284, which specifically authorizes a taxpayer " 'School Bond Waste Prevention Action.' " (Ed. Code, § 15284, subd. (e).) The pleading alleged that in February 2004 the District improperly revised its original plan by deleting the two new K-8 schools and

---

[5] The original complaint also named Council Urging Reform of Education as a plaintiff and certain members of the Board as defendants. They are not involved in this appeal.

two new temporary schools listed in Proposition O, and it improperly used bond funds to construct the Vista Focus Academy, which was not listed in Proposition O.[6]

At a bench trial, the McLeods argued the District was required to adhere to the letter of Proposition O by constructing each of the schools listed in the ballot materials. If there were insufficient funds to construct the facilities as originally planned, the District must ask voters for additional funds or reduce the size and quality of the facilities. Alternatively, if the District eliminated any schools listed in Proposition O, it must not incur any indebtedness related to them. In the McLeods' view, the District may not divert funds earmarked for projects eliminated from the original plan to other projects with cost overruns, such as the dual magnet high schools.

As a preliminary matter, the court considered whether the action is barred by the statute of limitations or laches. The District argued the action was untimely because it is subject to the 60-day statute of limitations set forth in validation statutes. (§§ 860, 863.) The McLeods stated "we don't think there is a statute of limitations."

The court determined the lawsuit "was filed substantially beyond any reasonable time limitation" and was also barred by the laches theory. Judgment for the District was entered February 15, 2007.

## DISCUSSION

### I

### *Standard of Review*

The determination of the statute of limitations applicable to a cause of action is a question of law we review independently. (*Pugliese v. Superior Court* (2007) 146 Cal.App.4th 1444, 1448 [53 Cal.Rptr.3d 681]; *Kaatz v. City of Seaside* (2006) 143 Cal.App.4th 13, 28 [49 Cal.Rptr.3d 95].)

### II

### *Section 526a*

Section 526a provides in part: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate,

---

[6] The first amended complaint also contained claims related to the dual magnet high schools, but the McLeods dismissed those claims at trial.

funds, or other property of a [local agency], may be maintained against any officer thereof, or any agent, or other person, acting [o]n its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein."

■ The purpose of section 526a "is to permit a large body of persons to challenge wasteful government action that otherwise would go unchallenged because of the standing requirement." (*Waste Management of Alameda County, Inc. v. County of Alameda* (2000) 79 Cal.App.4th 1223, 1240 [94 Cal.Rptr.2d 740].) "The essence of a taxpayer action is an illegal or wasteful expenditure of public funds or damage to public property. It must involve an actual or threatened expenditure of public funds. General allegations, innuendo, and legal conclusions are not sufficient; rather, the plaintiff must cite specific facts and reasons for a belief that some illegal expenditure or injury to the public fisc is occurring or will occur." (4 Witkin, Cal. Procedure (2002 supp.) Pleading, § 144, pp. 58–59.)

The McLeods assert their action has no statute of limitations since section 526a contains no limitations period. They assert that if section 526a nonetheless has a time limitation, under the Code of Civil Procedure it is either three years for a liability created by statute (§ 338) or four years for an "action for relief not hereinbefore provided." (§ 343.)

■ We are persuaded, however, by the District's contention that under the circumstances here, the action is subject to the 60-day statute of limitations for a validation action. "The gravamen of a complaint and the nature of the right sued upon, rather than the form of the action or relief demanded, determine which statute of limitations applies." (*Embarcadero Mun. Improvement Dist. v. County of Santa Barbara* (2001) 88 Cal.App.4th 781, 789 [107 Cal.Rptr.2d 6] (*Embarcadero*); see *Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22–23 [32 Cal.Rptr.2d 244, 876 P.2d 1043]; see also *Hills for Everyone v. Local Agency Formation Com.* (1980) 105 Cal.App.3d 461, 468 [164 Cal.Rptr. 420] ["it is the nature of the governmental action being challenged rather than the basis for the challenge that determines the procedure to be utilized . . ."].)

■ The validation statutes, sections 860 through 870, authorize a public agency to bring an action to validate certain matters, but they do not specify the matters to which they apply. Rather, section 860 provides the validation procedure applies to "any matter which under any other law is authorized to

be determined pursuant to this chapter." (§ 860.)[7] "A validating proceeding differs from a traditional action challenging a public agency's decision because it is an in rem action whose effect is binding on the agency and on all other persons." (*Millbrae School Dist. v. Superior Court* (1989) 209 Cal.App.3d 1494, 1497 [261 Cal.Rptr. 409].) Validation actions are "forever binding and conclusive." (§ 870.)

"The validating statutes contain a 60-day statute of limitations to further the important policy of speedy determination of the public agency's action." (*Embarcadero, supra,* 88 Cal.App.4th at p. 790; see *City of Ontario v. Superior Court* (1970) 2 Cal.3d 335, 340 [85 Cal.Rptr. 149, 466 P.2d 693] (*City of Ontario*); § 860.) "The validating statutes should be construed so as to uphold their purpose, i.e., 'the acting agency's need to settle promptly all questions about the validity of its action.' " (*Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 842 [73 Cal.Rptr.2d 427].)

If the public agency does not bring a validation action, "any interested person may bring an action within the time and in the court specified by Section 860 to determine the validity of such matter." (§ 863.) A validation action by an interested person is called a " 'reverse validation action.' " (*Kaatz v. City of Seaside, supra,* 143 Cal.App.4th at p. 30, fn. 16.) "Under the statutory scheme, 'an agency may indirectly but effectively "validate" its action *by doing nothing to validate it*; unless an "interested person" brings an action of his own under section 863 within the 60-day period, the agency's action will become immune from attack whether it is legally valid or not.' " (*California Commerce Casino, Inc. v. Schwarzenegger* (2007) 146 Cal.App.4th 1406, 1420 [53 Cal.Rptr.3d 626], citing *City of Ontario, supra,* 2 Cal.3d at pp. 341–342.) "[A]s to matters which have been or which could have been adjudicated in a validation action, such matters . . . must be raised within the statutory limitations period in section 860 et seq. or they are waived." (*Friedland v. City of Long Beach, supra,* 62 Cal.App.4th at pp. 846–847; see § 869 ["No contest except by the public agency . . . of any thing or matter under this chapter shall be made other than within the time and the manner herein specified."].)

■ A "validation action under . . . sections 860 et seq., and a taxpayer's action under . . . section 526a are not mutually exclusive." (*Regus v. City of Baldwin Park* (1977) 70 Cal.App.3d 968, 972 [139 Cal.Rptr. 196].) Rather, both actions may be brought to challenge governmental action if suit is filed

---

[7] In *Kaatz v. City of Seaside, supra,* 143 Cal.App.4th 13, 31, footnote 19, the court explained: "Our research discloses that there are more than 200 statutes that provide for validating proceedings pursuant to sections 860 through 870. The vast majority of these statutes are found in the Government Code (more than 50 statutes) and in the Water Code (more than 90 statutes)."

within the 60-day limitations period for validation actions. (*Ibid.*) In *Regus*, the court held taxpayers had standing to pursue a taxpayer waste action under section 526a and a reverse validation action under section 863 for illegal diversion of municipal funds to finance a redevelopment project, as they filed the action within 60 days of the city's adoption of ordinances approving the redevelopment plan. (*Regus, supra*, at pp. 971–972.) The action was based on Health and Safety Code former sections 33500 and 33501, which authorized a validation action to test the validity of a redevelopment plan and related financing mechanisms and specified a 60-day limitations period.[8] (*Regus, supra*, at p. 971.)

Similarly, in *Plunkett v. City of Lakewood* (1975) 44 Cal.App.3d 344, 346–347 [116 Cal.Rptr. 885] (*Plunkett*), the court held a 60-day limitations period applied to a section 526a action since the underlying substantive right, the alleged illegal expenditure of redevelopment funds, fell within the purview of validating statutes (§ 860; Health & Saf. Code, former §§ 33500, 33501).[9]

*Walters v. County of Plumas* (1976) 61 Cal.App.3d 460 [132 Cal.Rptr. 174] (*Walters*), was a taxpayer action that arose from the county's implementation of a solid waste disposal program. The third cause of action sought to set aside the county's guarantee agreement to assist franchisees in financing the purchase of heavy equipment needed for implementing the program. The court held the third cause of action was barred by section 860's 60-day statute of limitations. (*Walters, supra*, at p. 468.)

The court relied on Government Code section 53511 (now in subd. (a)), which authorizes a validation action by a local agency "to determine the validity of its bonds, warrants, contracts, obligations or evidences of indebtedness." The court explained: "We perceive the essential difference between those actions which ought and those which ought not to come under [the validation statutes] to be *the extent to which the lack of a prompt validating procedure will impair the public agency's ability to operate.* The fact that

---

[8] Currently, Health and Safety Code sections 33500, subdivision (a), 33501, subdivision (b), specifies a 90-day statute of limitations.

[9] *Plunkett* disagreed with the California Supreme Court's dicta in *City of Ontario, supra,* 2 Cal.3d at page 345, that the "statute of limitations in an ordinary taxpayers' suit is one year." *Plunkett* states the "text of section 526a does not support the suggestion in *City of Ontario* . . . that the section creates a one-year period of limitation. By its terms the section authorizes an action by a taxpayer who has paid a tax within one year last past and thus relates to the standing of the litigant to sue and not to his diligence in commencing suit." (*Plunkett, supra,* 44 Cal.App.3d at p. 346, fn. 1, citation omitted; see also *Nolan v. Redevelopment Agency* (1981) 117 Cal.App.3d 494, 502 [172 Cal.Rptr. 797].) Given our holding, we are not required to address the District's contention section 526a has a *maximum* statute of limitations of one year based on *City of Ontario.*

litigation may be pending or forthcoming drastically affects the marketability of public bonds; it has little effect upon such matters as a contract with a public defender or the purchase of a computer. We feel that the possibility of future litigation is very likely to have a chilling effect upon potential third party lenders, thus resulting in higher interest rates or even the total denial of credit, either of which might well impair the county's ability to maintain an adequate waste disposal program." (*Walters, supra*, 61 Cal.App.3d at p. 468, italics added.)

*Graydon v. Pasadena Redevelopment Agency* (1980) 104 Cal.App.3d 631 [164 Cal.Rptr. 56] (*Graydon*), was not a taxpayer waste action, but it also shows that the applicability of the 60-day limitations period of section 860 depends on the nature of the action rather than its label. In *Graydon*, the agency sold bonds to finance the public cost of a major shopping center development in a blighted area. At a public meeting that the petitioner attended, the agency awarded a contract for the construction of a public subterranean garage. (*Graydon, supra*, at p. 634.) Nearly 12 weeks later, she petitioned for a writ of mandate on the grounds the contract was awarded without competitive bidding, its terms were unfavorable to taxpayers and payment under the contract was a misuse of public funds. (*Id.* at pp. 634–635.)

The court held the action was barred by the 60-day statute of limitations because the "negotiated contract for the construction of the subterranean garage is an *integral part of the whole method of financing* the public costs associated with the retail center. The financing is by bonds issued by the Agency to be paid from tax increments allocated to the agency. . . . [¶] A considerable delay . . . would impair the ability of the Agency to pay the bonds and to operate and carry out the redevelopment plan. The contract is inextricably bound to the Agency's financial obligations. . . . [The] bonds were intimately and inextricably bound up with the award of this con-tract. . . . [¶] . . . The lack of a prompt validating procedure would impair this public agency's ability to operate and carry out its statutory purpose." (*Graydon, supra*, 104 Cal.App.3d at pp. 645–646, italics added; see also *Embarcadero, supra*, 88 Cal.App.4th at pp. 792–793 [based on underlying substantive right, action for establishment of constructive trust subject to 60-day limitation period of validation action].)

■ The District contends Government Code section 53511, subdivision (a) applies here. Again, it authorizes a local agency to bring a validation action under Code of Civil Procedure section 860 "to determine the validity of its bonds, warrants, contracts, obligations or evidences of indebtedness." Addi-tionally, Education Code section 15110 specifically authorizes a school

district to bring a validation action under Code of Civil Procedure section 860 "to determine the validity of bonds and of the ordering of the improvement or acquisition."

On appeal, the McLeods contend Government Code section 53511 and Education Code section 15110 are inapplicable because they "do not challenge issuance of any of the bonds or the financing associated with their issuance," and "there is nothing about the bonds or their issuance that is in dispute." At trial, however, they repeatedly argued that as an alternative to requiring the District to build the new K-8 schools and new temporary schools listed in Proposition O, the court should prohibit it from issuing and selling as yet unissued bonds authorized by the measure.

The District represented to the court that the "only expenditures left on this bond program are the dual magnet high school buildings. . . . The vast majority of the money was long ago spent. That is all that is left." The McLeods did not dispute the representation, and agreed there remained approximately $25 to $28 million in authorized but unissued bonds and the District intended to use those funds to complete the high schools. They argued the K-8 schools and temporary schools were estimated to cost in that range, and if the District were allowed to issue the remaining bonds but not construct those schools it would violate Proposition 39. They submitted that the District could not divert the remaining bond funds to the high schools, and to complete them it would have to either reduce their size and quality or present another bond measure to the voters.

■ The validation statutes apply because the District's issuance of the entire $140 million in bonds authorized by Proposition O was an "integral part of the whole method of financing" the costs associated with its comprehensive plan to alleviate school overcrowding. (*Graydon, supra,* 104 Cal.App.3d at p. 645.) If the District was precluded from issuing the remaining bonds at all, or allowed to issue the bonds only on the condition it build the K-8 and temporary schools, its plan, as amended because of cost overruns and other factors, would be thwarted because it could not complete the dual magnet high schools. This action directly challenged the validity of a planned bond issuance, and the lack of a prompt validating procedure would impair the District's ability to operate. (*Walters, supra,* 61 Cal.App.3d at p. 468.) The District explained at trial that "every single day that this case has not been decided it impairs the ability of the District to go to the bond markets and get the funding to complete the [high school] construction." The McLeods did not dispute the representation.

Additionally, the remaining bond funds were necessarily "inextricably bound up" with the award of contracts pertaining to the dual magnet high

schools. (*Graydon, supra*, 104 Cal.App.3d p. 646.) When the McLeods filed their suit, the District had already purchased the high school site, and by the time of trial construction was well under way, meaning, of course, that architectural and structural plans had been drawn and approved. Those activities were based on the District's new implementation plan and reallocation of bond funds, and there is no suggestion that by the time the McLeods sued the District it could have reduced the size or scope of the high schools or obtained additional bond financing for their completion. Contrary to their assertion, this action is not analogous to a challenge to a contract for the purchase of computer equipment, as a challenge to such a contract does not impede an agency's ability to operate (see *Smith v. Mt. Diablo Unified Sch. Dist.* (1976) 56 Cal.App.3d 412, 420–421 [128 Cal.Rptr. 572]). Here, time was of the essence.

In April 2005 the District voted not to refund to voters savings associated with deleting the K-8 schools and the temporary schools from its plan, thereby making clear its decision to use funds it would have used on those schools on completing the high schools. The District asserts, and we agree, that it could have brought a validation action after the Board's April 2005 meeting to validate the reallocation of Proposition O bond funds from the K-8 schools and the temporary schools to the dual high schools, and the issuance of remaining bonds to fund completion of the high schools. Indeed, validation actions are most commonly used to secure a judicial determination that a local agency's proposed issuance of bonds is valid. (*Kaatz v. City of Seaside, supra*, 143 Cal.App.4th at p. 39.) Further, it is axiomatic that when a local agency's action is subject to the validation statutes, any person interested in challenging the action is also subject to the validation statutes. (*Id.* at p. 32.)

We conclude the McLeods' action accrued no later than April 2005, and it was untimely under the 60-day statute of limitations of the validation statutes.[10] As the trial court explained, the District's challenged decisions were "made in the dynamics of an ever changing construction environment, decisions that, by their nature, had to be reviewed . . . as quickly as possible . . . to have any practical impact."[11]

---

[10] As the action was untimely based on the April 2005 date, we are not required to consider whether the action actually accrued even earlier.

[11] The reporter's transcript does not support the McLeods' assertion the trial court denied them standing under section 526a, and in any event, the matter is moot since their claim under that statute is time-barred. Further, it is immaterial that the court did not specifically refer to the validation statutes in its ruling. "[W]e review the trial court's order, not its reasoning, and affirm an order if it is correct on any theory apparent from the record." (*Blue Chip Enterprises, Inc. v. Brentwood Sav. & Loan Assn.* (1977) 71 Cal.App.3d 706, 712 [139 Cal.Rptr. 651].) Additionally, we are not required to consider the McLeods' contention the court erred by disallowing certain evidence, as that issue does not affect our statute of limitations discussion.

## III

### *Education Code section 15284*

■ Education Code section 15284, added by Proposition 39, allows a taxpayer within a school district to bring an action, dubbed a " 'School Bond Waste Prevention Action' " (Ed. Code, § 15284, subd. (e)), "to obtain an order restraining and preventing any expenditure of funds received by a school district . . . through the sale of bonds authorized by [Proposition 39]." (Ed. Code, § 15284, subd. (a).) As with Code of Civil Procedure section 526a, an action brought under Education Code section 15284 takes special precedence over all other civil matters except those granted equal precedence by law. (Ed. Code, § 15284, subd. (b).) "The rights, remedies, or penalties established by [Education Code section 15284] are cumulative to the rights, remedies, or penalties established under other laws, including subdivision (a) of Section 526 . . . of the Code of Civil Procedure." (Ed. Code, § 15284, subd. (c).)

As with section 526a, Education Code section 15284 contains no express statute of limitations. Further, there is no reported case discussing the matter. The McLeods contend the validation statutes' 60-day statute of limitations is inapplicable because Education Code section 15284 does not pertain to the validity of bonds, but rather to the validity of a school district's spending decisions. They assert that by failing to build projects listed in Proposition O and diverting funds earmarked for them to other projects, the District engaged in illegal expenditures.

Again, however, the McLeods' theory at trial was that the District should be prohibited from issuing between $25 and $28 million in remaining bonds authorized by Proposition O. Thus, their action did challenge the validity of the bond issuance, in part, and the District's financing mechanism for the project. We conclude that under these circumstances, the entire action was subject to the validation statutes and a 60-day limitations period. The McLeods' claims under both section 526a and Education Code section 15284 are taxpayer waste causes of action based on identical facts, and it would be contrary to the purposes of the validation statutes to allow the McLeods a lengthy period to file an identical claim under Education Code section 15284. Again, the District could have brought a validation action, and thus the McLeods were also subject to the validation statutes.[12]

---

[12] Given our holding, we are not required to address the court's alternative finding that the action is barred by the laches doctrine.

## DISPOSITION

The judgment is affirmed. The District is awarded costs on appeal.

McIntyre, J., and O'Rourke, J., concurred.

A petition for a rehearing was denied February 5, 2008, and appellants' petition for review by the Supreme Court was denied April 16, 2008, S161112. George, C. J., did not participate therein.