Filed 4/2/14  Van De Kamps Coalition v. LA Com. College Dist. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| VAN DE KAMPS COALITION,<br><br>      Plaintiff and Appellant,<br><br>   v.<br><br>LOS ANGELES COMMUNITY COLLEGE DISTRICT et al.,<br><br>      Defendants and Appellants;<br><br>ALLIANCE FOR COLLEGE-READY PUBLIC SCHOOLS,<br><br>      Real Party in Interest and Appellant. | B241970<br><br>(Los Angeles County<br>Super. Ct. No. BS124460) |

        APPEAL from a judgment of the Superior Court of Los Angeles County.  Ann I. Jones, Judge.  Reversed and remanded.

        The Law Office of Daniel Wright and Daniel E. Wright for Plaintiff and Appellant.

        Gresham Savage Nolan & Tilden, John C. Nolan, Jennifer M. Guenther, and Stefanie G. Field for Defendants and Appellants.

        Musick, Peeler & Garrett, Cheryl A. Orr and Geoffrey C. Brown for Real Party in Interest and Appellant.

McKenna Long & Aldridge and Charles A. Bird; California Charter Schools Association, Ricardo J. Soto, Julie Ashby Umansky, and Phillipa L. Altmann as Amicus Curiae on behalf of Real Party in Interest and Appellant.

_____

This litigation involves the historic Van de Kamps Bakery building, located at Fletcher Drive and San Fernando Road in Los Angeles. When a developer sought to destroy the building in 1999, the Van de Kamps Coalition (VDK) was formed to seek preservation of the building. In 2001, Los Angeles Community College District and the Board of Trustees of Los Angeles Community College District (collectively "LACCD") agreed to purchase the facility, preserve the structures, and modify them to create classrooms and educational facilities for a satellite community college campus.

The LACCD project was subject to a lengthy, six-year review process under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 2100 et seq.). In 2008, LACCD determined that it was not economically feasible to operate the community college at the site at that time. Instead of allowing the property to sit vacant, LACCD planned to allow interim educationally-oriented leases. In July 2009, LACCD approved a five-year lease with Alliance for College-Ready Public Schools ("Alliance") for operation of a charter high school with 500 students. In January 2010, VDK filed a petition for writ of mandate to challenge this action. The writ also challenged two other approved actions: LACCD's plans to physically modify the building to add two rooms where a student balcony was originally planned (the balcony project) and LACCD's authorization of the purchase of land adjacent to the bakery building (Portola property purchase). VDK's intent was to invalidate these actions and require compliance with CEQA.

LACCD and Alliance now appeal from a judgment of the superior court granting, in part, VDK's petition for writ of mandate. VDK cross-appeals from the partial denial of the writ.

LACCD and Alliance appeal from the portion of the judgment setting aside the Alliance lease and requiring supplemental CEQA review prior to the approval of any such lease.

VDK cross-appeals from the portions of the judgment refusing to overturn the Portola property purchase and declining to mandate CEQA compliance for the balcony project.

Both LACCD and VDK challenge the trial court's award to VDK of $127,610 in attorney fees.

## CONTENTIONS

For the first time in this appeal, LACCD and Alliance raise the contention that VDK's action, filed January 11, 2010, must be dismissed under the Validation Act (Code Civ. Proc., § 860 et seq., hereinafter "the Validation Act" or "the Act").[1] The Validation Act permits a public agency to validate certain acts within a 60-day period, particularly those which, as here, involve public bond funds. Where the public agency does not bring a validation action, the subject act becomes immune from attack unless an interested person brings a reverse validation action within the 60-day period. Because VDK did not challenge the July 15, 2009 decision to lease the property by means of a reverse validation action within the 60-day period required by section 863, LACCD and Alliance argue, this action must be reversed.

As set forth below, we are persuaded by LACCD and Alliance and find it unnecessary to address the other competing contentions raised by the parties.

## FACTUAL BACKGROUND

The Van de Kamps Bakery building was constructed in 1930, utilizing a unique Dutch motif. It became a famous landmark. However, the bakery closed in 1990, and the building fell into significant disrepair.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise noted.

3

In 1999, a real estate developer proposed a plan to destroy the building and erect a warehouse-style hardware store. An environmental impact report (EIR) was prepared under CEQA for that use. VDK, a group of 22 community-based organizations and individuals, worked to defeat the proposed project. Eventually the Los Angeles City Planning Commission refused to approve the project.

LACCD agreed to purchase the property in 2001 for a satellite community college campus. The purchase was carried out with $3 million allocated by the State Legislature and voter-approved bond funds. In May 2001 LACCD prepared an update to the prior hardware store project's final environmental impact report (2001 FEIR). The 2001 FEIR contemplated the development of a satellite campus on approximately five acres of the seven-acre former bakery site, with the remaining two-acre parcel to be separately developed by a private developer into retail commercial uses. The 2001 FEIR analyzed a broad range of educational uses.

The 2001 FEIR concluded that a student enrollment of 1,900, with approximately 50 faculty and staff, along with approximately 24,000 square feet of retail uses, would generate approximately 3,577 net new vehicle trips per day (with 247 a.m. and 344 p.m. peak net new trips.) It further concluded that the traffic impact created by the satellite campus would be similar to those of the hardware store that was originally proposed for the site. To mitigate the impact, the 2001 FEIR called for similar traffic mitigation measures to those earlier proposed for the hardware store, including the widening of Fletcher Drive at San Fernando Road for a new eastbound right-turn lane, and the widening of San Fernando Road at the nearby Glendale Freeway on-ramp for a new southbound right turn lane.

In 2002, LACCD completed a master plan for the satellite campus. The master plan proposed 90,000 square feet of classroom buildings, consisting of the adaptive reuse of 30,000 square feet of the original Van de Kamp building, and the construction of a new 60,000 square foot building. It included a student lounge, electronic library, fitness center and bookstore, as well as a community room and a 120 seat theater. It also envisioned 24,000 square feet of retail uses. LACCD prepared an addendum to the 2001

4

FEIR to document the changes in the plan. It analyzed the addition of 1,100 more students as well as a 6,000 foot increase in retail development for the adjacent two-acre parcel. The addendum contemplated that similar traffic impacts would exist; therefore it required traffic mitigation measures identical to those proposed in the 2001 FEIR.

In 2007, LACCD prepared a second addendum to the 2001 FEIR. The second addendum documented further changes to the plan, including the elimination of proposed theater and adjacent retail components. While the second addendum concluded that there would be similar traffic impacts to those considered previously, it added an alternative mitigation measure as a potential option in lieu of the Fletcher Drive/San Fernando roadway modifications. This alternative consisted of a "trip cap" that would limit the number of afternoon/evening peak period trips (p.m. trip cap) to 137.[2] The trip cap allowed for a total of 11 classes with 30 students each at 80 percent attendance, for a total of 264 students, all arriving on campus between the peak traffic hours of 4:00 p.m. and 6:00 p.m. LACCD approved this second addendum on September 19, 2007, and adopted the alternative p.m. trip cap mitigation measure.

Starting in late 2008, it became apparent to LACCD that the funds needed for the operation of the satellite college campus would not be available in a timely manner. Rather than have the property sit vacant, on July 15, 2009, LACCD announced that it was going to allow interim uses by educationally-oriented lessees.[3] This was announced as a

_____

[2]     On June 28, 2007, the Los Angeles Department of Transportation (LADOT) issued its comment letter on traffic issues. The estimated cost of LADOT's requested mitigation of a right-hand turn lane was in excess of $1 million. VDK suggests that LACCD's alternate mitigation plan sought to avoid the costly mitigation measure proposed by the LADOT.

[3]     VDK suggests that LACCD's claim that it lacked the economic ability to move forward with the proposed college campus is not accurate. VDK argues that the Los Angeles City College Academic Senate endorsed a plan to offer 80 percent profit/contract/educational partner classes to cover operating costs and provide a cushion to cross-subsidize 20 percent traditional academic classes without needing money from the state's budget, which was in crisis at the time. As we hold in this opinion, VDK's opportunity to challenge LACCD's financial decision to lease the property expired 60

5

temporary solution until LACCD had adequate funding to proceed with its original plan. On the same date, LACCD Board of Trustees approved a resolution which permitted LACCD to search for lessees, and approved a five-year lease with Alliance for the operation of a 500-student charter high school at the site. In connection with this approval, the LACCD Board determined that the uses proposed under the Alliance lease were within the scope of prior environmental review, therefore no additional CEQA review was necessary to approve the Alliance use and lease. The lease contained no traffic or parking restrictions on the charter school tenant.

At the July 15, 2009 board meeting, VDK representatives appeared and objected to the lack of any environmental review of the Alliance lease. The VDK representatives asserted that the changes in the use of the property would create significant traffic impacts that were not within the scope of the prior EIR obtained for the use of property as a community college campus. The LACCD Board approved the lease over VDK's objections.

On November 4, 2009, the LACCD Board considered a proposal to approve an amendment to an already existing contract with Quatro Design Group (Quatro) to alter interior designs of the bakery building, to begin design modification of the balcony project, and to officially sanction the Portola property acquisition. The measures were approved, along with a resolution finding that the Portola purchase and sale agreement was categorically exempt from CEQA.

At the December 16, 2009 board meeting, VDK objected to the absence of CEQA compliance with the purchase of the Portola property. The LACCD Board approved the item over the objections.

## PROCEDURAL HISTORY

On January 11, 2010, VDK filed its complaint seeking a writ of mandamus, declaratory relief and injunctive relief. The sole cause of action was violation of CEQA and CEQA guidelines. VDK challenged the July 15, 2009 resolution approving the

days after that decision in accordance with the Validation Act. These financial questions should have been raised within the time period set forth in the Act.

6

Alliance lease, the November 4, 2009 board resolution approving the Quatro contract, and a December 16, 2009 resolution approving the purchase and sale of the Portola property.

VDK filed an election to prepare the administrative record. However, the matter did not progress quickly due to the parties' disputes regarding the contents of the administrative record. The parties blame one another for the delay. Ultimately, the court ordered LACCD to lodge the administrative record with the court. On January 24, 2011, an 11-volume administrative record was filed with the court. Subsequently, another 10 volumes were lodged by LACCD.

The petition was heard on September 8, 2011. On September 12, 2011, the court issued its statement of decision. The court concluded that substantial evidence in the record supported a finding that it would be impossible for the lessees to meet the trip cap set forth in the second addendum to the master plan. The court noted that "[a]lthough possible restrictions on the tenants might have been imposed to eliminate the picking up of students during the PM Peak Time, none of these limitations found their way into the District's leases with its tenants." The court concluded that a supplemental EIR was required because, by the third year of the Alliance lease, the number of students picked up from the charter high school alone would exceed the p.m. trip cap. In sum, the court concluded that the loss of the alternative mitigation measure due to the change in tenants was a substantial change that required a revision in the FEIR.

As to VDK's challenge to the Portola property purchase, the trial court concluded that the project had not progressed enough to require CEQA review. The trial court did not directly address the balcony project.

The parties then met and conferred regarding a proposed judgment and writ based on the trial court's decisions. In October 2011, the parties submitted competing judgments and briefing in support of their positions. On October 25, 2012, the trial court sustained LACCD's objections to VDK's proposed judgment and ordered the parties to continue to meet and confer. After several months, the parties were still unable to agree on appropriate language for the final documents.

7

On February 3, 2012, VDK entered into the trial court's record objections to LACCD's proposed judgment and writ and reported to the trial court ongoing delay in getting a joint statement.  For unknown reasons, on February 6, 2012, the trial court pulled VDK's proposed judgment and writ, filed October 11, 2011, and entered it as judgment.  On February 10, 2012, LACCD and Alliance filed an ex parte petition to set aside the order of February 6, 2012.  The trial court rescinded the judgment.  VDK filed a motion to set aside the ex parte order, and a motion for an award of attorney fees.  The court refused to set aside its ex parte order setting aside VDK's proposed judgment.

On May 3, 2012, the trial court issued its decision, entered its judgment in the case, and issued the writ requiring LACCD to void the lease to Alliance.[4]  However, an equitable lease was imposed protecting the students of Alliance school until June 30, 2012.

In its ruling concerning VDK's request for attorney fees, the court determined that numerous hours reported were spent on "unnecessary" activity and slashed 94 hours from VDK's fee request.  The court also changed the requested hourly rate from $450 per hour to $350 per hour.  From VDK's initial request of $265,050, the court cut the hourly rate and the hours requested to a revised lodestar of $63,805.  The court applied a 2.0 multiplier to reach a final fee award of $127,610.

On June 12, 2012, LACCD filed its appeal.  On June 25, 2012, Alliance filed its appeal.  On June 28, 2012, VDK filed its cross-appeal.

**DISCUSSION**

**I.  Standard of review**

"On appeal, the appellate court's 'task . . . is the same as that of the trial court: that is, to review the agency's actions to determine whether the agency complied with procedures required by law.'  [Citation.]  The appellate court reviews the administrative record independently; the trial court's conclusions are not binding on it.  [Citations.]" (*Gentry v. City of Murrieta* (1995) 36 Cal.App.4th 1359, 1375-1376 (*Gentry*).)

---

[4]      The court ultimately prepared its own judgment and writ.

8

The central issue we discuss in this appeal is the whether the action is barred by the limitation provisions of sections 860 through 870. The determination of the statute of limitations applicable to a cause of action is a question of law we review independently. (*McLeod v. Vista Unified School Dist.* (2008) 158 Cal.App.4th 1156, 1164 (*McLeod*).)

## II. The Validation Act mandates dismissal of this appeal

LACCD and Alliance challenge the trial court's decision voiding the Alliance lease and requiring LACCD to complete a supplemental EIR before entering into such a lease.

LACCD and Alliance argue that because this is a project funded by Proposition 39 bond funds, and VDK is challenging a modification to the project, the 60-day statute of limitations provided by the Validation Act applies, making this lawsuit untimely.[5] LACCD argues that because this matter involves a Proposition 39 funded lawsuit, the 60-day statute of limitations found in the Act supersedes the 180-day statute of limitations for a CEQA suit.

VDK disagrees, arguing that the Validation Act is not cited in any of the statutes referenced in the resolution authorizing the lease. However, VDK cites no authority suggesting that a public agency must specifically cite the Validation Act, or a statute referencing the Validation Act, when carrying out the disputed resolution.

---

[5] Neither LACCD nor Alliance raised the Validation Act below at the trial court level. While we generally do not consider issues not raised in the trial court, there are exceptions where the question is one of law. (See *Vikco Ins. Services, Inc. v. Ohio Indemnity Co.* (1999) 70 Cal.App.4th 55, 67 ["we have discretion to consider an issue not properly raised in the trial court, if it presents a pure question of law on undisputed factual evidence regarding either (1) a noncurable defect of substance such as lack of jurisdiction or failure to state a cause of action, or (2) a matter affecting the public interest or the due administration of justice"].) Further, "the issue of whether a cause of action is stated is not waived by the failure to raise it in the trial court, and it may be raised for the first time on appeal. [Citations.]" (*Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 7, fn. 2.) VDK makes no reasoned or legally supported argument that LACCD and Alliance have forfeited this issue. For these reasons, we exercise our discretion to address the issue.

VDK acknowledges that challenges that others brought against LACCD for alleged waste of Proposition 39 bond funds in connection with this project were dismissed on demurrer when the LACCD raised the Validation Act as a defense. (See Alliance's request for judicial notice, exhibits 1 to 9.) VDK argues that this lawsuit is different because it challenges LACCD's noncompliance with CEQA mandates, and nowhere in the complaint does VDK challenge any spending of Proposition 39 bond funds. Thus, VDK argues, the gravamen of the complaint is discrete failure to comply with CEQA, not misuse of Proposition 39 bond funds.

As set forth below, we reject VDK's arguments and conclude that the Validation Act applied to LACCD's approval of the interim solution and the Alliance lease on July 15, 2009.

### A. The Validation Act

The Validation Act authorizes a public agency to bring an action to validate certain matters, but does not specify the matters to which it applies. (*McLeod, supra*, 158 Cal.App.4th at p. 1165.) "Rather, section 860 provides the validation procedure applies to 'any matter which under any other law is authorized to be determined pursuant to this chapter.' [Citation.]" (*Ibid.*, fn. omitted.)

"'A validating proceeding differs from a traditional action challenging a public agency's decision because it is an in rem action whose effect is binding on the agency and on all other persons.' [Citation.]" (*McLeod, supra*, 158 Cal.App.4th at p. 1166.) "Validation actions are 'forever binding and conclusive.' (§ 870.)" (*Ibid.*)

"'The validating statutes contain a 60-day statute of limitations to further the important public policy of speeding determination of the public agency's action.' [Citations.] 'The validating statutes should be construed so as to uphold their purpose, i.e., "the acting agency's need to settle promptly all questions about the validity of its actions."' [Citation.]" (*McLeod, supra*, 158 Cal.App.4th at p. 1166.)

"If the public agency does not bring a validation action, 'any interested person may bring an action within the time and in the court specified by Section 860 to determine the validity of such matter.' (§ 863.) A validation action by an interested

10

person is called a "'reverse validation action.'" [Citation.] 'Under the statutory scheme, "an agency may indirectly but effectively 'validate' its action *by doing nothing to validate it*; unless an 'interested person' brings an action of his own under section 863 within the 60-day period, the agency's action will become immune from attack whether it is legally valid or not.'" [Citation.]" (*McLeod, supra*, 158 Cal.App.4th at p. 1166; see also *Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 846-847 ["as to matters which have been or which could have been adjudicated in a validation action, such matters -- including constitutional challenges -- must be raised within the statutory limitations period in section 860 et seq. or they are waived"].)

### B. Applicability of the Validation Act to the July 15, 2009 approval of the interim solution and Alliance lease

As set forth above, the Validation Act applies to "any matter which under any other law is authorized to be determined pursuant to this chapter." LACCD and Alliance argue that the resolution approving the Alliance lease is subject to the provisions of the Validation Act under the authority set forth in Government Code section 53511.

The applicability of the Validation Act was relatively limited until the enactment of Government Code sections 53510 and 53511 in 1963. (*City of Ontario v. Superior Court* (1970) 2 Cal.3d 335, 342 (*Ontario*).) Government Code section 53511 provides that a local agency "may bring an action to determine the validity of its bonds, warrants, contracts, obligations or evidences of indebtedness pursuant to [the Validation Act]."[6]

The language of Government Code section 53511 is very broad, especially since there "is no limitation or qualification on the word 'contracts.'" (*Ontario, supra*, 2 Cal.3d at p. 343.) However, considering the statutory scheme as a whole, and the surrounding words within the statute itself, the Supreme Court has suggested that the statute's reach is limited to the topic of "a local agency's financial obligations." (*Id.* at p.

---

[6] Government Code section 53510 defines "local agency" as "county, city, city and county, public district or any public or municipal corporation, public agency or public authority."

11

344.)[7] Even taking into account this limitation on the statute's applicability, there can be little question that the statute authorizes validation actions for acts and contracts related to Proposition 39 bond expenditures. VDK makes no argument to the contrary.

Broadly speaking, the validation statutes have been interpreted to apply to agency action where the absence of a prompt validating procedure would impair the public agency's ability to operate. (*Graydon, supra*, 104 Cal.App.3d at p. 645; see also *McLeod, supra*, 158 Cal.App.4th at pp. 1167-1170.) The Validation Act applies to actions challenging a school district's revision of its plans for the use of Proposition 39 bond funds for purposes other than those approved by the voters. (*McLeod, supra*, at p. 1156 [dismissing as untimely a taxpayer waste action seeking to challenge school district's revised plan which scaled back the size of some approved projects and deleted plans to construct certain schools].) When considering a contract such as the Alliance lease at issue here, the key question is whether the contract is "inextricably bound to the Agency's financial obligations." (*Graydon, supra*, at p. 645.) This is true whether the challenge to the agency's financing arrangement is direct or indirect. (*California Commerce Casino, Inc. v. Schwarzenegger* (2007) 146 Cal.App.4th 1406, 1428.)

In this case, LACCD initially purchased the property in 2001 for use as a satellite community college campus through the use of voter-approved bond funds. However, by 2008 LACCD determined that due to its financial condition, the operation of the planned

---

**7** Later cases have acknowledged wider application of the Validation Act. As set forth in *Graydon v. Pasadena Redevelopment Agency* (1980) 104 Cal.App.3d 631, 643 (*Graydon*): "'The Supreme Court enumerated in *City of Ontario*, various aspects of the legislative history suggesting inapplicability of the validating statutes to contracts of the type here in question. Certain other features of that historical background, however, suggest an opposite interpretation. Most of the statutes enacted simultaneously with the validating act included language involving bonds and assessments. Some, however, referred to validation of contracts; although most of these latter concerned contracts with other -- often federal -- agencies, some involved contracts of acquisition and construction.'"

The *Graydon* court concluded that, at least in certain instances, "the Legislature understood the word 'contracts' in section 864 to include matters other than 'the limited topic of a local agency's financial obligations.' [Citation.]" (*Graydon, supra*, 104 Cal.App.3d at p. 644.)

12

satellite college campus was not immediately feasible. Rather than have the property sit vacant, on July 15, 2009, LACCD announced that as a temporary solution it was going to allow interim uses by educationally-oriented lessees until such time as the funds became available to operate the satellite college campus. On the same date, LACCD Board of Trustees approved a resolution which permitted LACCD to search for lessees, and approved a five-year lease with Alliance for the operation of a 500-student charter high school at the site. These formal acts of LACCD involved the redirection of the Proposition 39 bond funds and revision of the original plan. The Alliance lease, which was necessitated by LACCD's financial situation, was inextricably bound to LACCD's financial obligations. VDK does not argue that the resolutions and contract of July 15, 2009 did not involve Proposition 39 bond funds, nor does it address the *McLeod* or *Graydon* decisions.

Under the circumstances, we find that the actions of LACCD on July 15, 2009, could have been the subject of a validation proceeding.[8]

---

[8] In its request for judicial notice in support of opening brief filed on March 20, 2013, Alliance has brought to our attention two subsequently filed actions involving the events at issue in this lawsuit.

The first, captioned *Jackson et al. v. Los Angeles Community College District* (BS127587, filed July 26, 2010) was a petition for writ of administrative mandamus seeking an order preventing LACCD from entering into any contract or lease or transfer of possession of the Van de Kamps bakery building. The petitioners argued that because of the use of Proposition 39 bond funds, the real property must be used to provide community college classrooms and not to generate general fund income through a lease. LACCD demurred to the writ, arguing that the Validation Act precluded the proceeding. The trial court granted the demurrer, noting that there was "no doubt" that LACCD's July 15, 2009 decision to lease portions of the property to Alliance, and its approval of $400,000 in Proposition 39 funds to modify the architectural plans to comport with the plans of the non-community college lessees, "could have been the subject of a validation proceeding."

The second, captioned *Folsom et al. v. Los Angeles Community College District* (BS128994, filed Oct. 25, 2010) was framed as a school bond waste prevention petition. The petitioners challenged numerous actions of LACCD, including LACCD's "proposed ongoing future expenditure[s] . . . to pursue . . . plans to launder Proposition 39 restricted bond funds into unrestricted general fund monies using various parcels of land previously acquired by LACCD," including the former Van de Kamps Bakery building. This case

## C. *VDK's arguments do not change the result*

VDK sets forth several arguments against application of the Validation Act in this matter, none of which we find persuasive.

First, VDK argues that the validation procedures only apply where the petitioner has been put on warning as to the appropriate statute of limitations because the validation statute is referenced in a specific statute involving that particular program or type of proceeding. VDK cites several examples, such as Health and Safety Code section 33501 and the Local-State Financial Coordination Act (Gov. Code, § 53980 et seq.). However, VDK does not discuss or even reference Government Code section 53511, and provides no explanation as to why this section is insufficient to put it on warning of the shortened statute of limitations.

In a related argument, VDK states that LACCD purported to lease the premises to Alliance under the Education Code. VDK complains that the cited Education Code statute contains no reference to the Validation Act. However, VDK fails to cite any law indicating that in order for the Validation Act to apply, it must have been previously cited by the agency. Our research has not revealed any such requirement as a prerequisite for application of the Validation Act.

VDK next argues that the Validation Act does not apply because this is a CEQA action. VDK insists that it is not attacking any spending of Proposition 39 bond funds, therefore the Validation Act does not apply. VDK points out that its petition alleged three discrete failures to comply with CEQA.

---

was also dismissed after LACCD filed a demurrer citing the Validation Act. The court noted that the action represented the "fourth lawsuit against [LACCD] by the same group of individuals, all stemming from LACCD's plans to retain and utilize the Northeast Campus of Los Angeles City College (the former Van de Kamps bakery)." The trial court noted that "The validation statutes apply because, to obtain bonds authorized by Proposition 39 pursuant to a local measure submitted to the voters, a school district must list the specific school facility projects to be funded and state that the bond funds may be used only for those projects. . . . The implementation of a plan for use of bond funds that violates Proposition 39 falls within the validating procedure."

VDK has not opposed Alliance's request for judicial notice of these related materials, therefore we grant the request for judicial notice.

In making this argument, VDK takes the position that the nature of the action dictates whether or not the Validation Act applies in a particular proceeding. This position is incorrect. "[I]t is the nature of the governmental action being challenged rather than the basis for the challenge that determines the procedure to be utilized." (*Hills for Everyone v. Local Agency Formation Com.* (1980) 105 Cal.App.3d 461, 468. In *Hills for Everyone*, the petitioner argued that "CEQA governs the nature of the action to be utilized because it is a special statute whose provisions prevail over the general validating statute." (*Ibid*., fn. omitted.) The Second Appellate District disagreed, pointing out that while CEQA prescribes the scope of judicial review, "it does not make mandamus the exclusive procedure by which the validity of a governmental action may be challenged for alleged violation of its provisions." (*Ibid.*) Despite the nature of the challenge as a claim for CEQA violations, the court concluded that the petitioner "should have proceeded under the validating statute." (*Ibid.*) In sum, regardless of how the petition is framed, "[w]here the Legislature has provided for a validation action to review government actions, mandamus is unavailable to bypass the statutory remedy after the limitations period has expired. [Citations.]" (*Barratt American, Inc. v. City of Rancho Cucamonga* (2005) 37 Cal.4th 685, 705.)

### D. The 60-day validation period ended in September 2009 for the Alliance lease and related contracts

In this action, VDK purports to challenge three actions: July 15, 2009 resolution approving the Alliance lease, the November 4, 2009 board resolution approving the Quatro contract, and a December 16, 2009 resolution approving the purchase and sale of the Portola property. The latter two actions were undertaken in furtherance of the "resolutions which approved an interim use of the property and authorized [the] five-year lease of part of the Building to [Alliance]." (*Van de Kamps Coalition v. Board of Trustees of Los Angeles Community College Dist.* (2012) 206 Cal.App.4th 1036, 1040-1041 (*Van de Kamps Coalition*).) Thus, "the July 15, 2009 Resolutions constituted the

15

project approval for the purpose of CEQA review." (*Id.* at p. 1047.)[9] As explained in *Van de Kamps Coalition*, "The limitations period starts running on the date the project is approved by the public agency and is not retriggered on each subsequent date that the public agency takes some action toward implementing the project. [Citations.]" (*Id.* at p. 1045.)

Thus, VDK's opportunity to test the validity of the July 15, 2009 resolutions and those subsequent actions undertaken in furtherance of the July 15, 2009 resolutions expired no later than September 14, 2009. The writ, filed January 11, 2010, was untimely.

## DISPOSITION

VDK failed to test the validity of LACCD's actions in approving the interim solution, and entering the contract to lease the property to Alliance, within the time period specified in section 863. The matter is reversed and remanded to the trial court for entry of an order of dismissal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
    CHAVEZ

We concur:

_____, P. J.
BOREN

_____, J.
ASHMANN-GERST

---

[9]     While the court in *Van de Kamps Coalition* applied the 180-day statute of limitation found in the CEQA statute, the question of the appropriate statute of limitations was not at issue and the Validation Act was not raised at any time. (See *Van de Kamps Coalition, supra*, 206 Cal.App.4th at p. 1045.)