Filed 10/3/14  Mix v. City of Oakland CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DAVID E. MIX,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF OAKLAND,<br><br>    Defendant and Respondent. | A140477<br><br>(Alameda County<br>Super. Ct. No. RG12661429) |

**INTRODUCTION**

In this action challenging the City of Oakland's (City) issuance of pension obligation bonds for its police and fire employee retirement fund, the trial court held the lawsuit was untimely under the Validation Act (Code Civ. Proc., § 860 et seq.).[1]  The Validation Act permits a public agency to validate certain official acts within a 60-day period, particularly those which, as here, involve public bond funds.  Where the public agency does not bring a validation action, the subject act becomes immune from attack unless an interested person brings a "reverse validation action" within the 60-day period.  Because plaintiff David E. Mix did not challenge the decision to authorize the pension obligation bonds by means of a reverse validation action within the required 60-day period, we affirm.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise noted.

# FACTUAL BACKGROUND

## I. Background of the City's Prior Validation Action

"[The Police and Fire Retirement System (PFRS)] was created in 1951 when separate police and fire retirement systems were merged pursuant to article XXVI of the Oakland City Charter (Charter). [Citation.] Only members of the Oakland Police Department (Department) or Oakland Fire Department hired prior to July 1, 1976, are eligible for coverage by PFRS. [Citations.] Current members of the Department . . . are included in the state-created Public Employees' Retirement System (PERS). Thus, PFRS is essentially a closed system with a dwindling pool of retirees. As of January 31, 2012, PFRS had 619 retired police members and widows, with an average age of 73.

"PFRS is funded through a combination of member contributions (reportedly between 5 and 13 percent of each member paycheck), investment returns and additional monies supplied by the City 'as may be necessary.' [Citations.] Its governing Board consists of seven members, including representatives of the City, the Department, the fire department and the PFRS retirees, as well as a local life insurance executive, a banker and a community representative. [Citation.] Pursuant to the terms of the Charter, PFRS is managed and administered by the Board, which has 'exclusive control of the administration and investment' of all PFRS funds. [Citation.] " (*City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 216, fn. omitted (*City of Oakland*).)

On June 8, 1976, the voters approved Measure R, a Charter amendment affecting sections of Article XXVI. Among other things, the measure allowed unfunded City contributions to be amortized over a 40-year period.

On June 7, 1988, the voters approved Measure O, extending the amortization period for the obligation to fund the PFRS by 10 years, to 2026. (Charter, Art. XXVI, § 2619(6).)

On January 23, 1996, the City Council adopted Ordinance No. 11851 to enact the PFRS Pension Obligation Bond Law, which (1) authorized the City to issue bonds to finance all or a portion of its obligations to PFRS, (2) established the powers and procedures relating to the issuance of debentures and bonds for the purpose of funding or refunding the City's obligations to PFRS, and (3) provided that an action to determine the legality and validity of "proceedings previously taken or proposed" relating to such debentures and bonds could be brought under section 860 et seq. "or any of the general laws of the State applicable in the premises."

On February 6, 1996, the City Council adopted Resolution No. 72446, approving the issuance of one or more debentures and one or more series of pension obligation bonds, and authorizing delivery of a master trust agreement and additional supplemental trust agreements.

On August 28, 1996, the City, as authorized by Resolution No. 72447, filed a complaint for validation pursuant to section 860 et seq. The City sought court confirmation of the following: (1) the legality of proceedings relating to the issuance of debentures evidencing the City's obligations to fund PFRS, (2) the City's power to issue bonds, execute and deliver the trust agreement, and enter into an interest rate swap agreement and any other related agreements or contracts authorized by the Council, including the January 23, 1996 funding agreement between the City and PFRS, (3) the City's power to adopt the ordinance and resolutions pertaining thereto, and (4) the inapplicability of the constitutional debt limitation.

On September 9, 1996, the City successfully sought an ex parte order authorizing publication of notice of the pendency of validation proceedings.

On November 15, 1996, the City filed an application for default judgment.

On January 3, 1997, the trial court, noting that no interested parties had appeared in opposition of the City's application, entered default judgment in favor of the City.

3

## II. *Issuance of Pension Obligation Bonds*

On February 1, 1997, the City issued pension obligation bonds in the amount of $436,289,659.15 under a master trust agreement and a first supplemental trust agreement.

On February 25, 1997, the City executed a pension obligation debenture acknowledging indebtedness to PFRS in the amount of $432,867,300.

On September 1, 2001, the city issued a second series of pension obligation bonds in the amount of $195,636,449.10 under a second supplemental trust agreement.

On June 19, 2012, the City Council adopted Resolution No. 83940, approving the terms of sale of a third series of pension obligation bonds to fund PFRS.

On June 28, 2012, the City Council adopted Ordinance No. 13128, the final authorization for issuance and sale of the Series 2012 pension obligation bonds.

On July 1, 2012, the City issued a third series of pension obligation bonds in the amount of $212,540,000 under a third supplemental trust agreement.

On July 30, 2012, the City executed a pension obligation debenture acknowledging indebtedness to the PFRS the amount of $210,000,000.

## PROCEDURAL HISTORY

On December 27, 2012, plaintiff filed a complaint for declaratory and injunctive relief and a petition for writ of mandate challenging the authorization, issue, and sale of the Series 2012 pension obligation bonds. He claimed the bond issued violated the California Constitution's debt limit provision. (Cal. Const, art. XVI, § 18, subd. (a).)[2] He asserted his action was timely under sections 312 and 349.2 as having been filed within six months of the City's adoption of Ordinance No. 13128.

On March 27, 2013, the City filed a first amended answer to the complaint.

_____

[2] Article XVI, section 18, subdivision (a) reads, in relevant part: "No county, city, town, township, board of education, or school district, shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters of the public entity voting at an election to be held for that purpose . . . ."

On August 23, 2013, the City filed a motion for judgment on the pleadings. In part, the City asserted the complaint was barred by the 60-day statute of limitations set forth in sections 860[3] and 863[4].

On September 26, 2013, the trial court filed its order granting the motion for judgment on the pleadings without leave to amend.

On October 31, 2013, plaintiff filed a motion to set aside and vacate the judgment under section 663.

On December 9, 2013, the trial court denied the motion to set aside and vacate the judgment. This appeal followed.

## DISCUSSION

### I. Standard of Review

Appellate courts review the grant of a motion for judgment on the pleadings by applying the same rules that govern review of an order sustaining a general demurrer. (*Smiley v. Citibank* (1995) 11 Cal.4th 138, 146.) In each context, appellate courts independently determine whether a cause of action has been stated. (*Mendoza v. Continental Sales Co.* (2006) 140 Cal.App.4th 1395, 1401.)

The City initially claims the 1997 validation action judgment addressed future bonds holdings, in that it specifically held that future supplemental trust agreements issued under the master trust agreement are legal, binding, and do not violate constitutional debt limitations. The City argues the 1997 action is therefore final and

---

[3] Section 860 provides: "A public agency may upon the existence of any matter which under any other law is authorized to be determined pursuant to this chapter, *and for 60 days thereafter,* bring an action in the superior court of the county in which the principal office of the public agency is located to determine the validity of such matter. The action shall be in the nature of a proceeding in rem." (Italics added.)

[4] Section 863 provides, in relevant part: "If no proceedings have been brought by the public agency pursuant to this chapter, any interested person may bring an action *within the time* and in the court *specified by Section 860* to determine the validity of such matter. . . ." (Italics added.)

5

conclusive as to the issues raised in the present action.  We need not resolve this issue, however, because we conclude that the instant lawsuit is barred by the Validation Act's 60-day limitation period even assuming the 1999 judgment does not preclude the suit. The determination of the statute of limitations applicable to a cause of action is a question of law subject to independent review.  (*McLeod v. Vista Unified School Dist.* (2008) 158 Cal.App.4th 1156, 1164 (*McLeod*).)

## II.  *The Validation Act Applies to Plaintiff's Claims*

### *A. The Validation Act*

The Validation Act authorizes a public agency to bring an action to validate certain matters, but does not specify the matters to which it applies.  (*McLeod, supra,* 158 Cal.App.4th at p. 1165.)  "Rather, section 860 provides the validation procedure applies to 'any matter which under any other law is authorized to be determined pursuant to this chapter.'  [Citation.]"  (*Id.* at pp.1165-1166, fn. omitted.)  " 'A validating proceeding differs from a traditional action challenging a public agency's decision because it is an in rem action whose effect is binding on the agency and on all other persons.'  [Citation.]" (*Id*. at p. 1166.)  "Validation actions are 'forever binding and conclusive.'  [Citation.]" (*Ibid*.)

" 'The validating statutes contain a 60-day statute of limitations to further the important policy of speedy determination of the public agency's action.'  [Citations.] 'The validating statutes should be construed so as to uphold their purpose, i.e., "the acting agency's need to settle promptly all questions about the validity of its action." ' [Citation.]"  (*McLeod, supra,* 158 Cal.App.4th at p. 1166.)

"If the public agency does not bring a validation action, 'any interested person may bring an action within the time and in the court specified by Section 860 to determine the validity of such matter.'  [Citation.]  A validation action by an interested person is called a ' "reverse validation action." '  [Citation.]  'Under the statutory scheme, "an agency may indirectly but effectively 'validate' its action by doing nothing to

6

validate it; unless an 'interested person' brings an action of his own under section 863 within the 60-day period, the agency's action will become immune from attack whether it is legally valid or not." ' [Citations.]" (*McLeod, supra,* 158 Cal.App.4th at p. 1166, italics omitted; see also *Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 846-847 ["as to matters which have been or which could have been adjudicated in a validation action, such matters—*including constitutional challenges*—must be raised within the statutory limitations period in section 860 et seq. or they are waived"], italics added.)

### B. *The June 28, 2012 Authorization of the Series 2012 Pension Obligation Bonds*

As noted above, the Validation Act applies to "any matter which under any other law is authorized to be determined pursuant to this chapter." (§ 860.) The City asserts the ordinance approving the Series 2012 bonds is subject to the provisions of the Validation Act under the authority set forth in Government Code section 53511.

The applicability of the Validation Act was relatively limited until the enactment of Government Code sections 53510 and 53511 in 1963. (*Ontario v. Superior Court* (1970) 2 Cal.3d 335, 342 (*Ontario*).) Government Code section 53511, subdivision (a) provides that a local agency "may bring an action to determine the validity of its bonds, warrants, contracts, obligations or evidences of indebtedness pursuant to [the Validation Act]."[5] The language of this provision is very broad, especially since there "is no limitation or qualification on the word 'contracts.' " (*Ontario, supra,* at p. 343.) However, considering the statutory scheme as a whole, and the surrounding words within the statute itself, the Supreme Court has suggested the statute's reach is limited to the topic of "a local agency's financial obligations." (*Id.* at p. 344.)

Even taking into account this limitation on the statute's applicability, there can be little question that Government Code section 53511 authorizes validation actions for acts

---

[5] Government Code section 53510 defines "local agency" as "county, city, city and county, public district or any public or municipal corporation, public agency or public authority."

7

and contracts related to bonds, including pension obligation bonds. (See *Walters v. County of Plumas* (1976) 61 Cal.App.3d 460, 468 ["We perceive the essential difference between those actions which ought and those which ought not to come under [the validation statutes] to be *the extent to which the lack of a prompt validating procedure will impair the public agency's ability to operate*. The fact that litigation may be pending or forthcoming *drastically affects the marketability of public bonds;* it has little effect upon such matters as a contract with a public defender or the purchase of a computer"], italics added.) We conclude the present action concerning the Series 2012 pension obligation bonds falls within Government Code section 53511 which, by its express terms, applies to actions to determine the validity of bonds issued by a local agency such as the City.

### III. *The 60-Day Statute of Limitations Applies*

As noted above, section 863 provides, in relevant part: "If no proceedings have been brought by the public agency pursuant to this chapter, any interested person may bring an action within the time and in the court specified by Section 860 to determine the validity of such matter." Again, the time limit specified by section 860 is 60 days.

Plaintiff argues that a different statute of limitations period—the six-month period found in section 349.2—applies.[6] He notes that Oakland Municipal Code section

---

[6] Section 349.2 provides, in part: "Where any acts or proceedings are taken under color of law by or on behalf of any city, county, city and county, special district, public corporation or other public entity for the authorization, sale or issuance of bonds: [¶] (1) The validity of any such acts or proceedings for the authorization of bonds shall not be contested in any action unless such action shall have been brought within six months from the date of election authorizing said bonds, in cases where said bonds are required by law to be authorized at an election, or within six months from the date of adoption of a resolution or ordinance authorizing such bonds, in cases where bonds are not required by law to be authorized at an election; [¶] (2) The validity of any such acts or proceedings for the sale of bonds (including all acts or proceedings taken prior thereto and providing for the issuance of such bonds) shall not be contested in any action unless such action shall have been brought within six months from the date of sale of said bonds; [¶] (3) The validity of any such acts or proceedings for the issuance and delivery of, or payment for,

8

4.44.030, subdivision (C) provides: "An action may be brought pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 3 of the Code of Civil Procedure of the State of California [the Validation Act] *or any of the general laws of the state applicable in the premises,* to determine the validity of the debentures and bonds and the legality and validity of all proceedings . . . ." (Italics added.) He asserts section 349.2 represents "a general law of the state" that is "clearly applicable in the premises." He thus contends he was not required to file a reverse validation action under the Validation Act to assert his claims. He further argues his complaint does not fall within section 860 because it is not a proceeding "in Rem" and does not relate to "bonds" within the meaning of Government Code section 53511. Instead, he claims he seeks "nullification of the bond approval, issue and sale," and asserts section 349.2 is "clearly an appropriate statute by which to challenge the 'validity' of those bonds." He is mistaken.

While plaintiff claims section 349.2 "is also a 'bond validation' statute," it is merely a statute of limitations provision. It does not contain the basis for an independent right of action. Enacted prior to the Validation Act, section 349.2 operates solely to set forth the outer time limit within which to bring an action to contest the validity of bonds. We observe there are no reported cases construing this provision. However, it is well established that specific statutes take precedence over more general ones. (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 857.) Along these lines, section 869 of the Validation Act emphasizes the exclusiveness of the time constraints involved in bringing bond-related challenges: "No contest except by the public agency or its officer or agent *of any thing or matter under this chapter* shall be made *other than within the time and the manner herein specified*." (§ 869, italics added.)

---

bonds shall not be contested in any action unless such action shall have been brought within six months from the date of issuance and delivery of, or payment for, said bonds. . . ."

As discussed above, plaintiff's claims fall squarely within the provisions of section 860 et seq. As noted in *Ontario, supra,* it is a "fact that both section 860 and Government Code section 53510 purport to govern . . . those validation proceedings which are brought by *or against* a public agency . . . ." (2 Cal.3d 335, 343, original italics omitted, italics added.) Further, as that opinion also observes, "[t]he typical validating action seeks a declaratory judgment that the bonds, assessments, etc., of the agency are or are not valid . . . ." (*Id*. at p. 344.) As plaintiffs admits, he seeks to invalidate and nullify the Series 2012 bond issuance. However, he failed to file this action in a timely manner. Consequently we agree with the trial court that his challenge is not cognizable: "Where the Legislature has provided for a validation action to review government actions, mandamus is unavailable to bypass the statutory remedy after the limitations period has expired. [Citation.]" (*Barratt American, Inc. v. City of Rancho Cucamonga* (2005) 37 Cal.4th 685, 705.) Even if section 349.2 authorizes an independent claim, it has no application to the Series 2012 bonds because, under the Validation Act, the City's actions became "immune from attack" after 60 days, per *McLeod, supra,* 158 Cal.App.4th at p. 1166, and the authorities cited therein.

Nor is this lawsuit saved by the holding of *Kaatz v. City of Seaside* (2006) 143 Cal.App.4th 13 (*Kaatz*), on which plaintiff relies. In *Kaatz,* the defendant real estate developer successfully moved in the trial court for dismissal on the ground that the plaintiff had not sued under the validation statutes within 60 days. The appellate court reversed, holding that the municipality's conveyance of public property—along with the prior execution of the underlying contract with the developer concerning the potential acquisition and sale of the property—was not subject to validation. (*Id.* at p. 20.) In so holding, the court found the validation statutes did not apply to that action, in part because the challenged contract had no relationship to the issuance of bonds. (*Id.* at p. 42.)

Here, by contrast, plaintiff's claims specifically relate to the issuance of bonds and do not include any other substantive basis for a decision that would take it outside the reach of the validation statutes. We also note his claims bear a direct relationship to the City's 1997 validation action and seek the same relief that is authorized by section 863 – invalidation of the City's conduct in authorizing the Series 2012 pension obligation bonds. Accordingly, the Validation Act governs. As plaintiff filed his complaint well beyond the 60-day statute of limitations period that applies to such lawsuits, the action is untimely.

## DISPOSITION

The order is affirmed.

_____
Dondero, J.

We concur:

_____
Humes, P.J.

_____
Banke, J.

11