Filed 8/12/16

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| SCOTT WALTERS, as Administrator, etc., | D069255 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2013-00046965-CU-UR-CTL) |
| VALERIE A. BOOSINGER, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard E. L. Strauss, Judge. Affirmed.

Craig A. Sherman for Plaintiff and Appellant.

Rosenberg, Shpall, & Zeigen, Tomas A. Shpall and Amy C. Lea for Defendant and Respondent.

I.

INTRODUCTION

The case involves a dispute over the ownership of certain real property (the Property) between appellant Scott Walters (Scott), as the administrator of the estate of his father, Randy Walters (Randy), and Randy's former girlfriend, respondent Valerie

Boosinger. A 2003 deed named Randy and Boosinger as owners in joint tenancy of the Property. Upon Randy's death in 2013, Boosinger claimed sole ownership of the Property as the surviving joint tenant.[1] Scott brought a quiet title claim premised on the theory that the grant deed was void *ab initio*. We reject Scott's claim on appeal that such a claim may be brought "at any time." We conclude that the claim is subject to a statute of limitation and that Scott has failed to demonstrate that the trial court erred in concluding that his quiet title cause of action is time barred.

Scott also contends that he properly stated a claim for quiet title premised on the alternative theory that Randy and Boosinger severed their joint tenancy in the Property prior to Randy's death. We conclude that Scott failed to sufficiently allege facts demonstrating such severance and that he has not demonstrated that he could amend his complaint to properly allege a severance of the joint tenancy. Accordingly, we conclude that Scott has not properly stated a quiet title claim pursuant to this alternative theory.

---

[1]    "[T]he distinguishing characteristic of a joint tenancy is that each tenant has a *right of survivorship*, by which, upon the death of the other tenant, the survivor will automatically succeed to the entire property." (*Dang v. Smith* (2010) 190 Cal.App.4th 646, 660.)

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

A. *Proceedings related to Randy's original complaint*[2]

Randy filed the original complaint in this action against Boosinger in April 2013. In his complaint, Randy brought a single cause of action for partition. Randy alleged that he owned a 66.7 percent interest in the Property and that Boosinger owned a 33.3 percent interest. Randy requested that the court require Boosinger to purchase Randy's interest in the Property or conduct a forced sale of the Property in order to liquidate Randy's interest.

After Boosinger filed her initial answer to the complaint, Randy died. The trial court thereafter granted Scott's motion to be substituted into the case as the named plaintiff.

Boosinger filed an amended answer and a cross-complaint. In her cross-complaint, Boosinger alleged that the parties owned the Property as joint tenants pursuant to a February 2003 deed, and that upon Randy's death, the Property passed to Boosinger through her right of survivorship. Boosinger also filed a motion for judgment on the pleadings. In a supporting brief, Boosinger argued that because Randy and Boosinger owned the Property as joint tenants, the Property automatically transferred to Boosinger pursuant to her right of survivorship upon Randy's death. Accordingly, Boosinger

---

[2]    We provide additional factual and procedural history of the proceedings related to the original complaint in discussing Scott's contention that Randy and Boosinger severed the joint tenancy, in III.B.2., *ante*.

3

contended that Scott had no ownership interest in the Property upon which to bring a partition claim. Boosinger also requested that the court take judicial notice of the 2003 grant deed reflecting Randy and Boosinger's ownership of the Property as joint tenants.

The trial court granted Boosinger's request for judicial notice and her motion for judgment on the pleadings, with leave to amend. In its order, the court stated that "[t]o the extent [Scott] asserts that there was no joint tenancy and/or the joint tenancy was severed, no such facts are alleged in the complaint." The court granted Scott leave to amend the complaint in order "to allege facts supporting a right to relief with respect to the . . . [Property]."

B. *Scott's first amended complaint*

Scott filed a first amended complaint in which he brought claims for quiet title and partition. In his quiet title cause of action, Scott alleged that Randy and Boosinger purchased the Property as tenants in common in 1997, with Randy obtaining a 66.7 percent interest in the Property based upon his larger down payment and an agreement with Boosinger.

Scott acknowledged the existence of a 2003 grant deed for the Property that was recorded as a result of Randy and Boosinger's decision to refinance a loan on the Property. The 2003 deed, which Scott attached to his first amended complaint, grants ownership of the Property from "[Randy], an Unmarried Man as to an undivided 2/3 interest, and [Boosinger], a Single Woman as to an Undivided 1/3 interest as tenants in common," to "[Randy], an Unmarried Man and [Boosinger], a Single Woman *as Joint Tenants*." (Italics added.)

4

Despite the language in the 2003 deed, Scott alleged that Randy and Boosinger never owned the Property as joint tenants. In support of this allegation, Scott alleged that Randy never intended to create a joint tenancy with Boosinger. In addition, Scott alleged that Boosinger's friend, Susan O'Connor, who served as the broker's representative in connection with the 2003 refinancing, "breached her duty to Randy . . . because [she] knew, or should have known, that Randy . . . was chemically dependent and an alcoholic during the 2003 refinancing process." Scott alleged that O'Connor failed to ensure that Randy understood the nature of the documents that he signed in connection with the refinance. Scott contended that Randy had not intended to create the joint tenancy and that the "purported conveyance of ownership and transfer into a joint tenancy [was] void."

Alternatively, as discussed in greater detail in part III.B., *post*, Scott alleged that, if the joint tenancy had been created, Randy unilaterally severed the joint tenancy by way of the filing of the original complaint in this action, or that Randy and Boosinger jointly severed the joint tenancy through the combined operation of Randy's filing of the initial complaint and Boosinger's filing of an answer.

Scott further alleged that, upon Randy's death, Randy's two-thirds interest in the Property had passed to Randy's estate to be probated by Scott as the administrator of Randy's estate.

In his partition cause of action, Scott requested that Boosinger either purchase Scott's two-third's interest in the Property or that a forced sale of the Property be held such that Scott's interest would be liquidated.

5

C. *Boosinger's demurrer to the first amended complaint*

Boosinger demurred to both claims in the first amended complaint. In a supporting brief, with respect to Scott's claim for quiet title, Boosinger argued that any claim that the joint tenancy was void was barred by the statute of limitations. In support of this contention, Boosinger argued that Scott's claim was premised on "[Randy's] mistake or fraud in getting him to sign a grant deed conveying the Property to himself and Boosinger as Joint Tenants," and thus, the three-year statute of limitations contained in section 338, subdivision (d) applied to Scott's claim. (See Code Civ. Proc., § 338, subd. (d) [providing a three-year statute of limitation for "[a]n action for relief on the ground of fraud or mistake"].) Boosinger contended that Scott's cause of action had accrued no later than April 2007 when judicially noticeable documents demonstrated that Randy had actual notice "that Boosinger claimed half of the Property as joint owner, a fact which [Randy] disputed."[3] (See *ibid.* ["The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake"].) Boosinger claimed that the statute barred Scott's quiet title claim premised on the theory that the 2003 deed was void because the claim had not been brought prior to April 2010.

Boosinger also argued that Scott had not adequately stated a quiet title claim premised on the theory that the joint tenancy had been severed by virtue of the parties'

---

[3] Boosinger requested that the trial court take judicial notice of the documents, which had been filed in connection with Boosinger's request for a temporary restraining order against Randy.

filing of the pleadings in the action. Finally, Boosinger maintained that Scott could not properly state a cause of action for partition because he had no interest in the Property.

D. *Scott's opposition*

Scott filed an opposition brief in which he argued, among other contentions, that the 2003 grant deed was void *ab initio* and that "[a] three[-]year statute of limitations does not apply." Scott argued, in the alternative, that the parties had jointly severed any joint tenancy through the filing of their pleadings in this case.

E. *The trial court's ruling on the demurrer*

After further briefing and a hearing, the trial court sustained Boosinger's demurrer to Scott's quiet title cause of action on the ground that the claim is barred by the three-year statute of limitations in Code of Civil Procedure section 338. The court reasoned in part:

> "In this case, the theory of relief sought by [Scott], despite his protestations, is fraud. Therefore, the three[-]year statute of limitations set forth in [Code of Civil Procedure section] 338 [applies]. [Citation.] [Scott] alleges his father was defrauded into signing a grant deed naming the owners as joint tenants instead of tenants in common. [Citation.] However, [Randy] became aware [Boosinger] was claiming a joint interest in the [P]roperty as of 2007. Based upon [Boosinger's] request for a domestic violence TRO and [Randy's] response, it is clear [Randy] was aware [Boosinger] was claiming an equal and joint interest in the [P]roperty. [Citation.] Since [Randy] was aware in 2003[4] of [Boosinger's] adverse claim arising from alleged fraud, the

---

4    The court's order states *2003*, the year the grant deed naming Randy and Boosinger as joint tenants was executed. It is unclear whether the court intended to refer to 2003, or rather to *2007*, the year of the proceedings related to the temporary restraining order.

7

three[-]year statute of limitations applies. Further, since [Scott] failed to file his complaint within the three-year period, the statute of limitations bars his claim."

The trial court also sustained Boosinger's demurrer to Scott's cause of action for partition on the ground that Scott had no interest in the Property after the death of Randy. In its order, the trial court granted all of the parties' requests for judicial notice.

Thereafter, the court entered a written order sustaining the demurrer to the first amended complaint without leave to amend and dismissing the complaint.

F. *The appeal*

Scott timely appeals from the order of dismissal.[5]

III.

DISCUSSION

A. *The trial court did not err in concluding that Scott's quiet title claim is time barred insofar as the claim is premised on the theory that the 2003 grant deed is void*
ab initio

Scott claims that the trial court erred in determining that his quiet title claim is time barred. In support of this claim, Scott contends that a quiet title claim based on the

---

5 Ordinarily, an "order dismissing a complaint with prejudice constitutes an appealable judgment." (See *City of Morgan Hill v. Bay Area Air Quality Management Dist.* (2004) 118 Cal.App.4th 861, 867.) While this appeal was pending, in response to this court's inquiries as to the appealability of the judgment in light of the still pending cross-complaint, Boosinger dismissed her cross-complaint without prejudice and the parties informed us that the dismissal was not accompanied by any agreement between the parties regarding future litigation. We thereafter sent a letter to counsel indicating that Boosinger's dismissal and the accompanying representations created sufficiently finality to render the judgment appealable. (See *Kurwa v. Kislinger* (2013) 57 Cal.4th 1097, 1105.)

8

theory that a deed is void *ab initio* is not subject to *any* statute of limitation and that "an action thereon can be brought at *any* time." (Italics added.)

Scott's claim raises a question of law that we review de novo. (See *McLeod v. Vista Unified School Dist.* (2008) 158 Cal.App.4th 1156, 1164 ["The determination of the statute of limitations applicable to a cause of action is a question of law we review independently"].)

In *Salazar v. Thomas* (2015) 236 Cal.App.4th 467, at pages 476-477, the court outlined the following general principles of law that govern the determination of the statute of limitations for a quiet title action:

> "The Legislature has not established a specific statute of limitations for actions to quiet title. [Citation.] Therefore, courts refer to the underlying theory of relief to determine the applicable period of limitations. [Citations.] An inquiry into the underlying theory requires the court to identify the nature (i.e., the 'gravamen') of the cause of action. [Citation.] [¶] Generally, the most likely time limits for a quiet title action are the five-year limitations period for adverse possession,[6] the four-year limitations period for the cancellation of an instrument, or the three-year limitations period for claims based on fraud and mistake." (Fns. omitted.)

Courts have also concluded that an action to cancel a deed on the ground that the deed is void is subject to a statute of limitations. In *Robertson v. Superior Court* (2001) 90 Cal.App.4th 1319 (*Robertson*), the court considered the validity of a decision, *Hironymous v. Hiatt* (1921) 52 Cal.App. 727, 736 (*Hiatt*), in which the court stated that " 'an action to cancel a wholly void instrument can be brought at any time.' " (*Robertson*, *supra*, at p. 1324, quoting *Hiatt*, *supra*, at p. 736.) The *Robertson* court concluded that

---

6    It is undisputed that this case does not involve adverse possession.

"[t]he *Hiatt* court's view of things is especially inappropriate when applied, as here, to actions involving the title to or possession of real property." (*Robertson*, at p. 1327.)

In *Robertson*, the plaintiff filed a first amended complaint in 2000 requesting that the court declare void, pursuant to Civil Code section 3412,[7] a 1949 quitclaim deed executed by his mother, on the ground that she was mentally incompetent at the time she executed the deed. (*Robertson*, *supra*, 90 Cal.App.4th at p. 1321.)[8] The defendant demurred to the claim on the ground that the statute of limitations barred plaintiff's claim. (*Ibid.*) The trial court overruled the defendant's demurrer, ruling that an action to "cancel 'a wholly void instrument can be brought at any time,' i.e., is not subject to any statute of limitations." (*Ibid.*) The *Robertson* court granted the defendant's petition for writ of mandate and directed the trial court to vacate its order overruling the demurrer and to enter an order sustaining the demurrer. (*Id.* at p. 1329.)

The *Robertson* court concluded that the *Hiatt* court was "flatly wrong" (*Robertson*, *supra*, 90 Cal.App.4th at p. 1326) in concluding that there was no applicable statute of limitations to an action to cancel an instrument as being "wholly void." (*Robertson*, *supra*, at p. 1324.) The *Robertson* court reasoned:

---

[7]    Unless otherwise specified, all subsequent statutory references are to the Civil Code.

       Section 3412 provides, "A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled."

[8]    The *Robertson* court noted that it was not clear from the record when plaintiff had filed the original complaint. (*Robertson*, *supra*, 90 Cal.App.4th at p. 1321.)

"In *Moss v. Moss* (1942) 20 Cal.2d 640 (*Moss*), the plaintiff sued for a declaratory judgment that a decade-old property settlement agreement between him and his former wife, along with a later modification of it, were void as against public policy (because conditioned upon an agreement to secure a divorce). The trial court denied relief, principally upon the ground that the plaintiff was in pari delicto and the Supreme Court found no abuse of discretion in that ruling. But the plaintiff also argued on appeal that 'the complaint also alleges facts stating a cause of action for cancellation of the agreement.' (*Id.* at p. 644.) As to this claim, however, our Supreme Court held that the four-year limitations period of section 343 of the Code of Civil Procedure applied.[9] Citing a broad range of cases, including actions to set aside a deed made under undue influence, a proceeding to set aside a satisfaction of judgment, and actions to set aside void bonds, the court concluded: 'Although plaintiff contends that laches and lapse of time cannot be defenses in an action to cancel an instrument void because contrary to public policy . . . equitable factors . . . may not be used as a means of avoiding the express mandate of the statute of limitations. We must hold, therefore, that if plaintiff had a cause of action for cancellation, it is now barred by section 343 . . . .' (20 Cal.2d at p. 645.)" (*Robertson*, at p. 1325, fn. omitted.)

The *Roberston* court noted that numerous courts had reached similar results:

"Three years after *Moss* was decided, Division One of this district relied on it in an action expressly brought under Civil Code section 3412, ruling: 'Ordinarily a suit to set aside and cancel a void instrument is governed by section 343 of the Code of Civil Procedure.' (*Zakaessian v. Zakaessian* (1945) 70 Cal.App.2d 721, 725 (*Zakaessian*); see also, to the same effect, *Trubody v. Trubody* (1902) 137 Cal. 172, 173; *Wade v. Busby* (1944) 66 Cal.App.2d 700, 702; *Estate of Pieper* (1964) 224 Cal.App.2d 670, 688-689; cf. *Leeper v. Beltrami* (1959) 53 Cal.2d 195, 212-213.) The only exception to this rule, the *Zakaessian* court indicated, would be as and when fraud or mistake were involved, in which case the three-year period of [former Code of Civil Procedure] section 338, subdivision (4) would apply. (*Zakaessian*, *supra*, 70 Cal.App.2d at

---

9      Code of Civil Procedure section 343 provides, "An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued."

11

p. 725.)[10]  In short, if there were ever any merit to the position that there is no limitations period for actions brought under Civil Code section 3412 to declare an instrument void, post-*Moss* and *Zakaessian* there certainly is none." (*Robertson*, *supra*, 90 Cal.App.4th at pp. 1325-1327; accord *Marin Healthcare Dist. v. Sutter Health* (2002) 103 Cal.App.4th 861, 879 [citing *Zakaessian*, among other cases, and stating, "Nor does the fact that the contracts are claimed void avoid the statute of limitations.  Actions to void contracts are nonetheless subject to the statute of limitations"].)

Scott does not cite *Robertson*, nor any of the case law that it addresses, in his brief.

Scott does cite *Costa Serena Owners Coalition v. Costa Serena Architectural Com.*

(2009) 175 Cal.App.4th 1175 (*Costa Serena*) and *Erickson v. Bohne* (1955) 130

Cal.App.2d 553 (*Erickson*), in support of his contention that a quiet title claim based on

the theory that a deed is void *ab initio* is not subject to *any* statute of limitation.  For the

reasons discussed below, we conclude that the portions of *Costa Serena* and *Erickson* on

which Scott relies constitute dicta that should not be followed.

In *Costa Serena*, this court considered whether a party's challenge to certain

amendments to the declarations of restrictions governing a real estate development were

timely.  (*Costa Serena*, *supra*, 175 Cal.App.4th at pp. 1191-1197.)  In discussing the

distinction between instruments that were void *ab initio* and those that were merely

*voidable*, we quoted the following passage from *Erickson*, *supra*, 130 Cal.App.2d at

p. 556:

> " ' "[T]he courts distinguish between those cases in which a
> purported instrument never had any legal inception or existence—
> due to the fact that one party was induced to execute an agreement

10      Former Code of Civil Procedure section 338, subdivision (4) is now codified in Code of Civil Procedure section 338, subdivision (d).

12

totally different from that which he apparently made, or where, due to the fraud, there was no execution at all—and those cases in which the agreement was induced by fraudulent misrepresentations or concealments which in no degree make the instrument anything other than it purports to be. *In the first case it is clear that the purported agreement is void* ab initio *and an action to avoid it may be brought at any time*, or it may be treated as nonexistent; while in the second case the agreement is voidable and may be rescinded at the election of the party defrauded . . . ." ' " (*Costa Serena*, *supra*, at p. 1193 (italics added), quoting *Erickson*, *supra*, at p. 556.)

However, it is clear that the italicized portion of the quotation in *Costa Serena* was dicta because the *Costa Serena* court held that the amendments at issue in that case were merely *voidable*, and that the party's claim was untimely. (*Costa Serena*, at pp. 1194-1197.)

*Erickson*, in turn, did not involve a statute of limitations question. Rather, in *Erickson*, the court considered whether a plaintiff had stated a cause of action against a third party purchaser of certain real property (Pierce) on the ground that a deed through which Pierce obtained ownership of the property was void *ab initio* because the plaintiff had not known that she was signing a deed to the property.[11] (*Erickson*, *supra*, 130 Cal.App.2d at pp. 554-556.) The *Erickson* court cited a legal encyclopedia for the proposition quoted in *Costa Serena* above, namely, that an action to cancel a legal instrument premised on a claim that "one party was induced to execute an agreement

---

[11] Whether the plaintiff had properly stated a cause of action against Pierce was in turn relevant to the ultimate question raised on an appeal, i.e., whether the trial court had erred in denying certain other defendants' motion for change of place of the trial. (*Erickson*, *supra*, 130 Cal.App.2d at p. 555.)

13

totally different from that which he apparently made" (*id.* at p. 556) is a claim that the instrument is void *ab initio*, and may be brought at any time. (*Ibid.*)

It appears that the source of the dicta in *Costa Serena* and *Erickson* is the California Supreme Court's decision in *Loftis v. Marshall* (1901) 134 Cal. 394 (*Loftis*).[12] In *Loftis*, the plaintiff brought a quiet title action against defendants claiming title to real property through a deed that the plaintiff claimed had been obtained through the "fraudulent procurement" of the plaintiff's wife, Mary Loftis, and her son, George Marshall. (*Id.* at p. 395.) The plaintiff alleged that, at the time he signed the deed in question, he was "in a drunken condition, and wholly incapacitated from attending to business, and was induced to sign the deed by representations made to him by them that it was a letter to one Horrigan, and by the belief to that effect thus engendered." (*Ibid.*) The "principal question" on appeal was whether the plaintiff's action was barred by a judgment in a former action. (*Id.* at p. 396.) However, the *Loftis* court also considered whether the trial court erred in overruling the defendants' demurrer on the ground that the action was untimely. In addressing this issue, the *Loftis* court stated the following:

> "It is alleged that the plaintiff, 'in pursuance of the . . . conspiracy and the . . . fraudulent and deceitful acts of . . . Mary Loftis and George D. Marshall, was kept in ignorance of the . . . grant (or deed) until the . . . day of October, 1894.' This, we think, was a sufficient allegation of the discovery of the fraud within three years before the commencement of the action.[13] . . . Nor do we think the allegation

---

12    *Loftis* is cited in the portion of the legal encyclopedia quoted in *Erickson*. (See 12 Cal.Jur. (1923) Fraud and Deceit, § 10, p. 722, fn. 6.)

13    The *Loftis* court did not state the basis for the three-year limitation period. However, it appears that the court was likely referring to former Code of Civil Procedure section 338. (See *Marks v. Evans* (1900) 62 P. 76, 78 [stating that former Code of Civil

14

was material. *On the theory of the appellants—which we have assumed to be correct—the deed was void, and the plaintiff, except as against an adverse possession of five years, could maintain his action at any time*." (*Id.* at p. 398, italics added.)

The *Loftis* court did not cite any authority for the italicized statement, and did not consider the four-year catch-all limitation provision Code of Civil Procedure, section 343, discussed above.[14] (See fn. 9, *ante*.) In addition, no California published case has *ever* cited this *Loftis* for this proposition.[15] Further, as noted above, in 1942, the California Supreme Court held in *Moss* that a party's claim that an instrument was void as being contrary to public policy *was* subject to the four-year statute of limitations in Code of Civil Procedure section 343. (*Moss*, *supra*, 20 Cal.2d at p. 645.) A claim that an instrument is contrary to public policy constitutes a claim that the instrument is void *ab initio*. (See *Salton Bay Marina, Inc. v. Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 941.) Thus, in *Moss*, the California Supreme Court concluded that a claim premised on a contention that an instrument is void *ab initio is* subject to a statute of limitation, contrary to its earlier statement in *Loftis*.

Further, numerous cases in the wake of *Moss*, have reached results similar to that in *Moss*. (See *Robertson*, *supra*, 90 Cal.App.4th at p. 1319 [collecting cases]; see also *Sullivan v. Dunnigan* (1959) 171 Cal.App.2d 662, 667 [deed procured by fraud supported

---

Procedure section 338 "provid[ed] that an action for relief on the ground of fraud must be commenced within three years after the discovery of the facts constituting such fraud"].)

14 Code of Civil Procedure section 343 was initially enacted in 1872.

15 In fact, despite the fact that *Loftis* was decided more than a century ago, it appears that only one California case has ever cited *Loftis* for *any* proposition. (See *Davidson v. Baldwin* (1906) 2 Cal.App. 733, 736 [citing *Loftis* for a proposition concerning agency law].)

15

by evidence that grantor had "no present intention to part with title to the interest purportedly conveyed," was subject to three-year statute of limitations in former Code of Civil Procedure section 338, subdivision (4)].) As the *Robertson* court noted, *Moss* and its progeny, "make clear," that "*statutes of limitations apply whether the document under challenge is asserted to be 'void' or 'voidable.'* " (*Robertson*, *supra*, at p. 1326, fn. 6, italics added.) We agree with the *Robertson* court, and conclude that the *Loftis* court's statement that a claim premised on the theory that a deed is void may be brought at any time (*Loftis*, *supra*, 134 Cal. at p. 398) is an aberration that was implicitly overruled in *Moss*. Thus, we conclude that *Loftis* and the dicta it spawned in *Erickson* and *Costa Serena* should not be followed.

Accordingly, we reject Scott's contention that a quiet title claim based on the theory that a deed is void *ab initio* is not subject to *any* statute of limitation and "can be brought at *any* time." (Italics added.) We therefore conclude that Scott has not demonstrated that the trial court erred in determining that his quiet title claim is time barred insofar as the claim is premised on the theory that the 2003 grant deed is void *ab initio*.[16]

---

[16] The sole argument that Scott raised in his opening brief with respect to this issue was that his quiet title claim could be brought at any time because the first amended complaint alleged that the 2003 grant deed was void *ab initio*, for various reasons, namely, lack of intent, lack of capacity, and fraud. We reject Scott's argument, for the reasons stated in the text. Scott did not raise any argument pertaining to *which* statute or statutes of limitations applied to his claim, and thus we need not address this issue. (See *Robertson*, *supra*, 90 Cal.App.4th at p. 1326 [noting that either Code of Civil Procedure section 343 or Code of Civil Procedure section 338, subdivision (d) may apply to an action to cancel an instrument as void depending on the theory alleged].) Nor does Scott

16

B.  *Scott's first amended complaint did not properly state a claim for quiet title premised on the theory that Randy and Boosinger severed the joint tenancy*

Scott contends that he properly stated a claim for quiet title based on his allegation that any joint tenancy ownership of the Property existing between Randy and Boosinger was severed by Randy and Boosinger through the combination of Randy's filing of the original complaint for partition and Boosinger's filing of her verified answer to the complaint.

We consider de novo whether Scott properly stated a quiet title cause of action pursuant to this theory.  (See *Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42 ["On review from an order sustaining a demurrer, 'we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose' "].)[17]

---

maintain in his opening brief that his claim was timely under either Code of Civil Procedure section 343 or Code of Civil Procedure section 338, subdivision (d), or that some other statute of limitations applies.

In his *reply* brief, Scott contends for the first time on appeal that the trial court improperly considered "the contents of judicially noticed documents" (capitalization omitted), in concluding that Randy had notice, no later than 2007, that Boosinger asserted that the Property was held in joint tenancy and that Scott's claim was therefore untimely under Code of Civil Procedure section 338, subdivision (d).  Scott presents no reason why this claim was raised for the first time in reply.  Accordingly, we decline to consider this claim.  (See *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894, fn. 10 (*Shade Foods*) [" ' "points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before" ' "].)

[17]  As noted in part II., *ante*, Boosinger addressed Scott's joint tenant severance theory in her demurrer.  However, Scott correctly notes that the "trial court did not address the second alternatively pleaded argument" in its order sustaining Boosinger's

1. *Governing law*

"A joint tenancy, with its attendant 'right of survivorship,' is an estate designed primarily to allow two or more persons who jointly own property to avoid probate upon the death of one of the joint tenants.  At common law, four unities were required to create a joint tenancy:  interest, time, title, and possession.  [Citation.] . . . If one of the unities were destroyed, a tenancy in common would result."  (*Estate of England* (1991) 233 Cal.App.3d 1, 4.)

Section 683.2 outlines a nonexclusive list of methods by which a joint tenancy may be severed.  (*Estate of England*, *supra*, 233 Cal.App.3d at p. 5 [stating that section 683.2 "makes clear that statutory severance is not exclusive"].)  Subdivisions (a) through (c) of the statute describe several ways in which a joint tenancy may be *unilaterally* severed by a joint tenant.[18]  Section 683.2, subdivision (d), discussing severances effectuated by "all the joint tenants," provides:

---

demurrer.  Nevertheless, because we must affirm the trial court's judgment if it is correct on any theory, we consider de novo whether Scott has properly stated a quiet title cause of action pursuant to this theory.  (See *Hendy v. Losse* (1991) 54 Cal.3d 723, 742 ["On appeal from a judgment of dismissal entered after a demurrer has been sustained without leave to amend . . . the appellate court must affirm the judgment if it is correct on any theory"].)

[18]    Section 683.2 provides in relevant part:

> "(a) Subject to the limitations and requirements of this section, in addition to any other means by which a joint tenancy may be severed, a joint tenant may sever a joint tenancy in real property as to the joint tenant's interest without the joinder or consent of the other joint tenants by any of the following means:

> "(1) Execution and delivery of a deed that conveys legal title to the joint tenant's interest to a third person, whether or not pursuant to an

18

"(d) Nothing in subdivision (c) limits the manner or effect of:

"(1) A written instrument executed by all the joint tenants that severs the joint tenancy.

"(2) A severance made by or pursuant to a written agreement of all the joint tenants.

"(3) A deed from a joint tenant to another joint tenant."

"[A]n agreement between joint tenants to dispense with the right of survivorship terminates a joint tenancy relationship. [Citation.] Furthermore, an agreement between

---

agreement that requires the third person to reconvey legal title to the joint tenant.

"(2) Execution of a written instrument that evidences the intent to sever the joint tenancy, including a deed that names the joint tenant as transferee, or of a written declaration that, as to the interest of the joint tenant, the joint tenancy is severed.

"(b) Nothing in this section authorizes severance of a joint tenancy contrary to a written agreement of the joint tenants, but a severance contrary to a written agreement does not defeat the rights of a purchaser or encumbrancer for value in good faith and without knowledge of the written agreement.

"(c) Severance of a joint tenancy of record by deed, written declaration, or other written instrument pursuant to subdivision (a) is not effective to terminate the right of survivorship of the other joint tenants as to the severing joint tenant's interest unless one of the following requirements is satisfied:

"(1) Before the death of the severing joint tenant, the deed, written declaration, or other written instrument effecting the severance is recorded in the county where the real property is located.

"(2) The deed, written declaration, or other written instrument effecting the severance is executed and acknowledged before a notary public by the severing joint tenant not earlier than three days before the death of that joint tenant and is recorded in the county where the real property is located not later than seven days after the death of the severing joint tenant."

19

joint tenants which is inconsistent by its terms with one or more of the four essential unities of joint tenancy will be considered a severance even though it does not expressly terminate the joint tenancy." (*Estate of Blair* (1988) 199 Cal.App.3d 161, 169.)

2. *Factual and procedural background*

In his original April 2013 complaint for partition, Randy alleged in relevant part:

> "2. [Randy] is, and was at all relevant times mentioned herein, a resident of San Diego County, California. He is the current co-owner and joint title deed holder in the . . . Property since it was purchased in 2003. [Randy] owns a two-thirds (66.7%) interest in the . . . Property based percentage [*sic*] of original capital and investment made at the time of purchase, as well as the understanding and agreement of [Randy] and co-owner Boosinger at that time.
>
> "3. Defendant [Boosinger] is, and has been at all relevant times mentioned herein, a resident of San Diego County, California. Boosinger owns a one-third (33.3%) interest in the . . . Property based on her smaller proportion of [the] downpayment and investment made at the time of purchase, as well as the agreement and understanding between co-owners [Randy] and Boosinger." (Some capitalization omitted.)

In addition, among other allegations, paragraph 13 of the complaint alleged:

> "[Randy] has, and continues to hold, a two-thirds (66.7 %) ownership interest in the . . . Property."

In her original June 2013 verified answer, Boosinger *admitted* the allegations in paragraphs 2 and 3, but denied paragraph 13.

Randy died on July 3, 2013. The court granted Scott's motion to be substituted in as the named plaintiff in the action in May 2014.

20

Boosinger filed a motion for leave to file an amended verified answer to the complaint and a cross-complaint in July 2014. Scott filed a notice of nonopposition to Boosinger's motion in October 2014. In addition, on November 3, 2014, Scott's counsel signed a stipulation that states in relevant part:

> "As a result of newly discovered facts and circumstances, including the death of [Randy] and substitution of his personal representative as Plaintiff, the parties have agreed that Defendant Valerie A. Boosinger be allowed to file her Amended [V]erified Answer to Complaint as well as her Verified Cross-Complaint."

The trial court granted Boosinger's motion for leave to file an amended answer and a cross-complaint on November 7, 2014.

In her amended verified answer to the complaint, Boosinger alleged the following with respect to paragraphs 2 and 3 of Scott's complaint:

> "2. [Boosinger] admits that [Randy], deceased, was at all relevant times a resident of San Diego County California. [Boosinger] admits that when the [P]roperty was purchased, [Randy] owned [a] two-thirds interest in the [P]roperty based on a percentage of [the] original capital and investment made at the time of purchase. [Boosinger] denies that the [P]roperty was purchased in 2003.
>
> "3. [Boosinger] admits she is, and at all relevant times was, a resident of San Diego County. [Boosinger] admits that upon purchase of the property, she owned [a] one-third interest in the [p]roperty based on her smaller portion of the down-payment and investment made at the time of the purchase as well as the agreement and understanding between co-owners [Randy] and Boosinger." (Some capitalization omitted.)

Boosinger denied paragraph 13 of the complaint.

In her cross-complaint, Boosinger alleged the following:

"[Boosinger] obtained her interest in fee simple title to the [Property] by a Grant Deed dated February 26, 2003 transferring the [P]roperty to [Randy] and [Boosinger] as joint tenants, and recorded at the official records of the San Diego County Recorder's Offices . . . . In July, 2013, [Randy] passed away. [Scott] then initiated probate proceedings and was appointed as personal representative of the estate of [Randy], deceased. However, as a result of the joint tenancy relationship with the right of survivorship, and death of [Boosinger's] Joint Tenant, [Randy's] title to the subject property is manifested to [Boosinger] solely."

Scott filed a first amended complaint in June 2015 in which he alleged in relevant part:

"If the joint tenancy was not severed unilaterally[19] on April 30, 2013 when [Randy] filed and served the [*Original Complaint*], it was severed when Boosinger filed her *Verified Answer* to the [*O*]*riginal* [*Complaint*] on or about June 26, 2013 because the [*Original Complaint*] and *Verified Answer* together constituted a signed writing by the parties acknowledging a right to severance and the creating of a tenancy in common with [Randy] such that he again owned a two-thirds interest and Boosinger owned a one third interest." (Some capitalization omitted.)

---

19   In his reply brief, Scott contends for the first time on appeal that he properly stated a claim for quiet title premised on the theory that Randy *unilaterally* severed the joint tenancy. While this theory is pled in the first amended complaint, Scott's argument in his opening brief was restricted to his contention that there was a "*bilateral* joint tenancy severance." (Italics added.) Scott did *not* present a legal argument that he had adequately pled a *unilateral* severance, and Scott presents no reason why it was raised for the first time in reply. Accordingly, we decline to consider this claim. (See *Shade Foods*, *supra*, 78 Cal.App.4th at p. 894, fn. 10.)

3. *Application*

Scott argues that "[b]y the enactment of subdivision (d) [of Section 683.2], the Legislature sought to preserve rights accorded parties via common law and written instruments that communicate a bilateral notice and *intent to sever a joint tenancy*." (Italics added.) We agree. However, Scott cites no common law authority, and we are aware of none, that holds that a court may interpret a party's complaint and another party's *superseded* answer to constitute an *instrument* that severs a joint tenancy.

While there are numerous cases that hold that a joint tenancy may be severed by an express or implied *agreement* of the joint tenants (see, e.g., *Estate of Blair*, *supra*, 199 Cal.App.3d at pp. 168-169), the complaint and the superseded answer in this case do not constitute evidence of such an agreement. That is because it is unclear, even from Boosinger's superseded answer, that Boosinger agreed that she and Randy owned different percentage interests in the property (and therefore were not joint tenants). While Boosinger *admitted* paragraphs 2 and 3 of the complaint, which stated that "[Randy] owns a two-thirds (66.7%) interest in the . . . Property," ([¶] 2) and "Boosinger owns a one-third (33.3%) interest in the . . . Property," ([¶] 3, some capitalization omitted) she *denied* the allegation that "[Randy] has, and continues to hold, a two-thirds (66.7 %) ownership interest in the . . . Property." ([¶] 13, some capitalization omitted).

Further, Scott does not claim that Boosinger's verified but superseded answer constituted a judicial admission. (See *Minish v. Hanuman Fellowship* (2013) 214

23

Cal.App.4th 437, 456 ["The doctrine of judicial admissions also does not apply to allegations in pleadings that have been superseded by amendments, especially where the initial pleading was not verified and the court granted permission to file the amended pleading to correct a potentially damaging admission in the initial pleading that was the result of mistake, inadvertence, or inadequate knowledge of the facts"].)[20]

Under these circumstances, we conclude that the first amended complaint did not properly state a claim for quiet title premised on the theory that Randy and Boosinger severed the joint tenancy by way of his complaint and her answer. Accordingly, we conclude that the trial court did not err in sustaining, without leave to amend,[21] Boosinger's demurrer to Scott's quiet title cause of action premised on this theory.[22]

---

[20] Accordingly, we need not decide whether a party's *judicial admission* that real property is not held in joint tenancy may be considered an *agreement* that the property is not held in joint tenancy.

[21] Scott does not argue on appeal that he could amend his complaint to allege additional facts such that he could properly state a claim for quiet title pursuant to this theory. Accordingly, we conclude that Scott has not demonstrated how he could amend his complaint to properly state such a claim. (See *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [stating that the burden of demonstrating a reasonable possibility that a defect in a complaint can be cured by an amendment is "squarely on the plaintiff"].)

[22] As noted in part II., *ante*, the trial court sustained Boosinger's demurrer to Scott's cause of action for partition on the ground that "[Scott] has no interest in the [P]roperty after the death of [Randy]." Apart from the claims that we have rejected in the text with respect to whether Scott adequately alleged a claim asserting an interest in the Property, Scott does not raise any claim with respect to this aspect of the trial court's ruling. Accordingly, Scott has not demonstrated that the trial court erred in sustaining Boosinger's demurrer to the partition claim without leave to amend.

## IV.

## DISPOSITION

The judgment is affirmed.

AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

PRAGER, J.*

---

*       Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.