Filed 3/8/23  Matthews v. ResMAE Mortgage Corp. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ETHEL MATTHEWS,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>RESMAE MORTGAGE CORPORATION et al.,<br><br>        Defendants and Respondents. | B312712<br><br>(Los Angeles County Super. Ct. No. 19STCV35033) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Monica Bachner, Judge.  Affirmed.

Ethel Matthews, in pro. per. for Plaintiff and Appellant.

Kutak Rock, Steven M. Dailey and Jennifer L. Andrews for Defendants and Respondents Select Portfolio Servicing, Inc., Mortgage Electronic Registration Systems, Inc., and U.S. Bank N.A.

Early Sullivan Wright Gizer & McRae, William A. Wright and Diane M. Luczon for Defendant and Respondent Stewart Title Guaranty Company.

McCarthy & Holthus and Melissa Robbins Coutts for Respondent Quality Loan Service Corporation.

_____

This is an appeal from a Superior Court of Los Angeles County judgment following an order sustaining, without leave to amend, the demurrers of Defendants and Respondents Select Portfolio Servicing, Inc. (SPS), Mortgage Electronic Registration Systems, Inc. (MERS), and U.S. Bank N.A., as Trustee, on Behalf of the Holders of the J.P. Morgan Mortgage Acquisition Trust 2006-HE3 Asset Backed Pass-Through Certificates, Series 2006-HE3 (U.S. Bank), Stewart Title Guaranty Company (STGC), and Stewart Title of California, Inc. (STCA), to the Second Amended Complaint (SAC) of Appellant Ethel Matthews (Appellant).  In the same proceeding, the trial court also granted a Motion for Judgment on the Pleadings by Respondent Quality Loan Service Corporation (QLS) on Appellant's SAC.  We affirm.

## BACKGROUND

### I.    Factual Background

On June 19, 2006, Appellant purchased the real property located at 100 East Newby Avenue #1, San Gabriel, CA 91776 (Property) and obtained a $675,000 loan from ResMAE Mortgage Corporation (ResMAE) that was secured by the Property.  The Deed of Trust was recorded on June 19, 2006.  MERS was the beneficiary of the Deed of Trust as nominee for ResMAE, its successors and assigns, and the trustee was STCA.  In connection with the purchase, Appellant also obtained an owner's policy of title insurance issued by STGC and countersigned by STCA.

2

Appellant alleged that prior to loan origination there were misrepresentations made to her about the purchase price and the status of the Property as being classified as a "condominium," and she felt pressured to enter into the loan transaction. Appellant claimed her HUD-1 Settlement Statement had a "falsified loan amount" and she complained she "never received a copy of any final or recorded loan documents at the end of escrow." Appellant further claimed her title insurance policy was not the proper one and contained "false statements."

Appellant alleged she received notices dated September 11, 2006 and November 22, 2006 stating the servicing rights were being transferred from ResMAE and Delaware Savings Bank to JPMorgan Chase Bank (Chase). Appellant alleged that the original lender ResMAE filed for bankruptcy and liquidated its assets in February 2007. Appellant alleged that because neither ResMAE nor Delaware Savings Bank existed in 2006, the servicing transfers were "ineffective and invalid."

On January 4, 2008, a Notice of Default and Election to Sell Under Deed of Trust was recorded. On February 29, 2008, a Substitution of Trustee, executed by MERS, was recorded, appointing First American, f/k/a First American Loanstar Trustee Services as substitute trustee. A Notice of Trustee's Sale was recorded on April 8, 2008. On March 3, 2008, an Assignment of Deed of Trust was recorded reflecting MERS assigned the Deed of Trust to "U.S. Bank National Association, as Trustee for JPMAC 2006-H3, J.P. Morgan Chase Bank, National Association."

On April 27, 2008, Appellant filed a Chapter 11 bankruptcy petition. In her schedules, Appellant identified the Property and the secured loan at issue here and did not disclose she had any

3

claims against her lender.  On March 20, 2009, Chase Home Finance, LLC, as servicing agent for MERS, filed a motion for relief from the automatic stay with respect to the Property, and the court granted relief May 15, 2009.  The case was converted to Chapter 7 and Appellant was discharged on May 3, 2011.

Further Notices of Trustee's Sale were recorded on August 7, 2009 and September 22, 2010.  Appellant alleged Chase made promises of a loan modification, but a trial plan was denied.

On January 10, 2011, a Grant Deed was recorded reflecting Appellant transferred the Property to herself and John H. Matthews.  On December 23, 2011, a Corporate Assignment of Deed of Trust was recorded reflecting Assignment of the Deed of Trust from MERS to U.S. Bank; however, MERS already assigned the Deed of Trust to U.S. Bank.

On May 2, 2012, a Notice of Rescission of Declaration of Default was recorded rescinding the January 4, 2008-recorded Notice of Default.  On March 29, 2013, another Substitution of Trustee was recorded appointing California Reconveyance Company as successor trustee.  On the same day, a Notice of Default was also recorded.  That Notice of Default was rescinded on August 1, 2016.  On December 17, 2013, a Grant Deed to a Revocable Trust was recorded reflecting that Appellant and John J. Matthews transferred the Property to Ethel Matthews, as Trustee of the Matthews Living Trust.

Servicing of the loan transferred to SPS in 2013.  Appellant alleges SPS "confirmed" that there was no loan on her property due to a bankruptcy discharge.

On October 18, 2016, a Corrective Assignment of Deed of Trust was recorded to correct the name of the assignee of the April 16, 2008 Assignment to Respondent U.S. Bank.

On December 6, 2016, a Substitution of Trustee was recorded reflecting substitution of QLS as successor trustee under the Deed of Trust.  On December 6, 2016, another Notice of Default was recorded on the Property reflecting as of December 2, 2016, Appellant was in default in the amount of $642,088.30.

Appellant's bankruptcy case was reopened in February 2017 and Appellant filed a Motion for a Permanent Injunction claiming that U.S. Bank, MERS, SPS, and others violated the automatic stay and discharge injunction through their efforts to enforce the Deed of Trust.  On June 29, 2017, the court denied Appellant's motion finding no automatic stay violation or contempt.  The court also found Appellant's attack on Assignment of the Deed of Trust failed under California law.  The bankruptcy case terminated on July 26, 2017.  Notices of Trustee's Sale were then recorded on March 9, 2017 and July 19, 2017.

On October 2, 2017, Appellant filed another Chapter 13 bankruptcy petition.  She filed schedules on October 16, 2017.  On schedule A/B, Appellant did not identify any of the claims asserted here, or relating to the Property in any way.  The matter was dismissed on October 18, 2017 for failure to file schedules, statements or a plan.  Another Notice of Trustee's Sale was recorded on April 26, 2018.

On October 3, 2019, a Grant Deed was recorded reflecting Appellant, as trustee for the Matthews Living Trust dated December 10, 2013, transferred title to herself (95 percent interest), and Phil Matthews (5 percent interest).  Another Notice of Trustee's Sale was recorded on October 31, 2019.

5

## II. Matthews' Prior Lawsuits

### a. The 2007 Action

On November 7, 2007, Appellant filed a prior lawsuit entitled *Ethel Matthews v. Infra + Arch Development, Inc.*, et al. (Super. Ct., L.A. County, No. GC039852) (2007 Action). In her complaint filed in the 2007 Action, Appellant sued STCA, and several other defendants, for fraud and other claims pertaining to the same 2006 transaction involving the Property.

In that complaint, Appellant alleged, among other things, that she was defrauded in the purchase transaction, the "purchase numbers" in the transaction had changed, she believed she was purchasing a single family residence but was advised during escrow that it was a condominium, she was pressured to close on the purchase, and that, after the close of escrow, she was advised in September 2006 by the tax assessor's office that the Property was "a single family residence." Appellant subsequently dismissed STCA from the 2007 Action on March 10, 2008.

Appellant thereafter filed a First Amended Complaint (FAC) in the 2007 Action on May 30, 2008 (against various defendants, but not STCA or STGC) in which she once again alleged, among other things, that the lender "overcharged and/or did not disclose certain fees" in connection with her loan, that the "purchase numbers" in the transaction were changed, and that she was misled as to whether the Property was a "detached town home" or a "single family residence" or a "condominium."

### b. The 2010 Action

On June 23, 2010, Appellant filed a complaint in the Los Angeles Superior Court against her original lender, ResMAE, and others, relating to the same secured loan and the same Property at issue in this case (*Matthews I*). Appellant alleged, in part, that

6

Defendants made various misrepresentations at loan origination. Appellant claimed she was fraudulently induced into purchasing the Property and obtaining the loan. Appellant filed a FAC on July 12, 2011 alleging claims for quiet title and fraud, and she added Deed of Trust beneficiary U.S. Bank as a Defendant. She alleged, in part, that the loan was not property assigned to U.S. Bank, and it thus lacked authority to foreclose. On September 27, 2011, the court granted U.S. Bank's Motion to Strike the Complaint without leave to amend.

### c. The 2014 Action

On July 3, 2014, Appellant filed another complaint in Los Angeles Superior Court relating to the same secured loan and the same Property at issue in this case (*Matthews II*). Beneficiary U.S. Bank, SPS, MERS, were named as defendants in *Matthews II*, among others.

Appellant alleged, in part, that Defendants lacked "standing to enforce the power of sale or foreclosure" and the "assignments remain ineffective." She further claimed Defendants violated the automatic bankruptcy stay and made misrepresentations in the loan modification application process.

Appellant filed her FAC on September 24, 2014 alleging 10 causes of action, continuing to attack authority to foreclose, claiming an automatic stay violation, and improprieties in the loan modification negotiation process. On December 19, 2014, the court sustained the demurrer of U.S. Bank, SPS, and MERS, to the FAC, without leave to amend, and entered judgment with prejudice.

### III.  Procedural History of This Case

Appellant filed her initial complaint on October 1, 2019, asserting, among other claims, wrongful foreclosure and quiet title to the Property.  Appellant sought a temporary restraining order to enjoin the foreclosure of the Property and the court denied the application.

Appellant filed a FAC on January 10, 2020.  On July 27, 2020, the court sustained demurrers to the FAC filed by defendants SPS, MERS, U.S. Bank as Trustee, and Stewart Title, with leave to amend.  In its written ruling, the court found each of Appellant's claims failed to state viable causes of action and that her claims were barred by res judicata based on prior actions Appellant had filed against the defendants.

Appellant filed a SAC on August 27, 2020, asserting causes of action for:  (1) Lack of Standing to Foreclose; (2) Fraud; (3) Slander of Title; (4) Unfair Competition; (5) Quiet Title to Real Property; (6) Cancellation of Instruments; and (7) Declaratory Relief.

SPS, MERS, and U.S. Bank as Trustee filed a demurrer to the SAC and a Motion to Strike, and Stewart Title and Stewart Title of California, Inc. filed a separate demurrer and a Motion to Strike.  Quality Loan Service filed an answer to the SAC on November 3, 2020, followed by a Motion for Judgment on the Pleadings.

As with the prior pleading, Appellant alleged "Defendants have not proven authority or any cause to foreclose upon and sell [Appellant's] Property," as the Assignments were allegedly invalid, and she "denies a lien ever existed."  Appellant alleged the Assignment was recorded after the closing date of the securitized trust.  She claimed MERS was not authorized to

8

assign the Deed of Trust. Appellant further claimed that the original lender ResMAE dissolved or filed for bankruptcy, rendering Assignment to U.S. Bank void. Respondents demurred.

On March 16, 2021, the court sustained Respondents' demurrers, without leave to amend. In addition to finding that Appellant failed to state a claim for her causes of action, the court further found that her "causes of action appear to be barred by the doctrine of res judicata on the face of the SAC and judicially noticed documents." Specifically, through *Matthews II*, Appellant " 'challenged standing to enforce the power of sale or foreclosure and the assignments,' and those claims were finally adjudicated in favor of Defendants or their privies." The court also found the SAC was collaterally estopped because Appellant " 'did not disclose her claims against Defendants in the instant action in her bankruptcy schedules' in her 2017 and 2018 bankruptcy actions, despite the fact 'she was already aware of her claims challenging the enforceability of the Deed of Trust.' "

The trial court ruled that Appellant's causes of action against STGC and STCA were time-barred by the applicable statutes of limitations. The court found that Appellant knew about the circumstances that caused the statutes of limitations to start to run in 2006 (when Appellant purchased the Property) or in 2007 (when Appellant filed her 2007 Action).

The court also granted QLS's Motion for Judgment on the Pleadings without leave to amend. The court held that Appellant's tort causes of action were barred by the litigation privilege under Civil Code section 2924.

The court entered judgment on April 5, 2021. Appellant timely appealed on May 14, 2021.

9

## DISCUSSION

### I.     Standard of Review

"It is well established that a demurrer tests the legal sufficiency of the complaint.  [Citation.]  On appeal from a dismissal entered after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the petition states a cause of action as a matter of law.  We give the petition a reasonable interpretation, reading it as a whole and viewing its parts in context.  [Citations.]  We deem to be true all material facts that were properly pled.  [Citation.]  We must also accept as true those facts that may be implied or inferred from those expressly alleged.  [Citation.]  We may also consider matters that may be judicially noticed, but do not accept contentions, deductions or conclusions of fact or law."  (*City of Morgan Hill v. Bay Area Air Quality Management Dist.* (2004) 118 Cal.App.4th 861, 869–870.)

"If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment.  [Citation.]  If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred.  [Citation.]  The plaintiff has the burden of proving that an amendment would cure the defect."  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

"Because a motion for judgment on the pleadings is similar to a general demurrer, the standard of review is the same.  [Citation.]  We treat the pleadings as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . [¶] . . . We consider evidence outside the

pleadings which the trial court considered without objection. [Citation.]" (*Baughman v. State of California* (1995) 38 Cal.App.4th 182, 187.)

## II. The Trial Court Correctly Sustained the Demurrers and Granted Judgment on the Pleadings

### a. Demurrer Filed by SPS, MERS, and U.S. Bank

#### i. Appellant's SAC is Barred By Res Judicata

As Respondents point out, Appellant has essentially left unchallenged the trial court's finding that the SAC is barred by res judicata. While Appellant is *in pro per*, she is not excused from sufficiently supporting her arguments in briefing. A self-represented party on appeal " 'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys. [Citation.]' [Citation.] Thus, as is the case with attorneys, pro. per. litigants must follow correct rules of procedure." (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247 [deficiencies in *pro per* appellant's opening brief resulted in waiver of issues on appeal].) On this basis alone, we may affirm the trial court. (*See Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [when an appellant "fails to support [an issue] with reasoned argument and citations to authority, we treat the point as waived"].)

Even considering the merits of the trial court's analysis, we conclude that the trial court correctly found that Appellant's SAC is barred by res judicata or claim preclusion. "A clear and predictable res judicata doctrine promotes judicial economy. Under this doctrine, all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date. ' "Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the

11

same cause of action on a different legal theory or for different relief." ' [Citation.] A predictable doctrine of res judicata benefits both the parties and the courts because it 'seeks to curtail multiple litigation causing vexation and expense to the *parties* and wasted effort and expense in *judicial administration*.' [Citation.]" (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 897; *see also Mark v. Spencer* (2008) 166 Cal.App.4th 219, 229.)

The elements for claim preclusion are: " '(1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding. [Citations.]' " (*People v. Barragan* (2004) 32 Cal.4th 236, 253.)

"To determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have 'consistently applied the "primary rights" theory.' " (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797 (*Boeken*).) Under this theory, " '[A] "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.]' " (*Hayes v. County of San Diego* (2013) 57 Cal.4th 622, 630–631.) "The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." (*Boeken, supra*, at p. 798.)

The case of *Gillies v. JPMorgan Chase Bank, N.A.* (2017) 7 Cal.App.5th 907, 914 is instructive. In *Gillies* the court explained a judgment sustaining a demurrer to a wrongful foreclosure

12

complaint in a prior action is not a "mere suggestion[] which allow[s a party] to perpetually file new lawsuits on new theories" (*id*. at p. 915) or based on newly enacted laws.  Rather, the judgment precludes all actions involving the same " ' "particular injury, regardless of the legal theory on which the injury is based." ' " (*Id*. at p. 914.)  "Somewhere along the line,  litigation must cease." (*Ibid*.)  "It matters not that appellant has a new theory of wrongful foreclosure.  It is the same primary right which appellant has always claimed," the right to be free from foreclosure.  (*Ibid*.)

As detailed above, on July 3, 2013, Appellant filed a complaint against Respondents US Bank, SPS, MERS, ResMae, and other named defendants in *Matthews II*.  As the trial court properly found in that case, Appellant's causes of action, like those in the instant action, challenged Respondents' "standing to enforce the power of sale or foreclosure," and asserted the "assignments remain ineffective."  Appellant further claimed Respondents violated the automatic bankruptcy stay through enforcing the Deed of Trust, and made misrepresentations in the loan modification application process.  Accordingly, Appellant is attempting to seek redress of the same harm or primary right— that the foreclosure process is improper based on invalid underlying Deeds of Trusts and Assignments.

On December 19, 2014, the court in *Matthews II* sustained the demurrer of U.S. Bank, SPS, and MERS to the FAC, without leave to amend, and entered judgment, with prejudice.  "[F]or purposes of applying the doctrine of res judicata . . . , a dismissal with prejudice is the equivalent of a final judgment on the merits . . . .  'The statutory term "with prejudice" clearly means the plaintiff's right of action is terminated and may not be

13

revived. . . . [A] dismissal with prejudice . . . bars any future action on the same subject matter.' " (*Boeken, supra,* 48 Cal.4th at p. 793.) It is the equivalent of a judgment on the merits. (*Torrey Pines Bank v. Superior Court* (1989) 216 Cal.App.3d 813, 820–821.) As such, the trial court in the instant case properly sustained Respondents' demurrer on the basis of res judicata. We therefore need not address the parties' other contentions, and affirm the judgment.

### b. Demurrer by STGC and STCA

As with her arguments against U.S. Bank, SPS, and MERS, Appellant fails to offer any cogent legal argument or authority as to STGC or STCA. As STGC and STGC point out, Appellant's opening brief hardly mentions STGC or STCA and fails to explain how any of the allegations in Appellant's SAC state a valid claim for relief against STGC or STCA. On this basis alone, we may affirm the trial court's order. (*See Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" 'We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' "].)

Nonetheless, we address the merits of the trial court's conclusion that the SAC is time barred against STGC and STCA. As the trial court properly found, the only factual allegations relating to STGC are STGC's unspecified role in recording a purported backdated unsecure lien, or the recorded Assignment, dated November 14, 2011. Appellant attached to her SAC an assignment of the beneficial interest under the original June 13, 2006 Deed of Trust, dated November 14, 2011 and recorded December 23, 2011.

14

We "interpret discovery in this context to mean not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff suspected or should have suspected that an injury was caused by wrongdoing." (*Kline v. Turner* (2001) 87 Cal.App.4th 1369, 1374.) " 'Under this rule constructive and presumed notice or knowledge are equivalent to knowledge. So, when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to [him or her] . . . the statute commences to run.' " (*Parsons v. Tickner* (1995) 31 Cal.App.4th 1513, 1525; *see also Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1111 (*Jolly*) ["Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights."]) As a general matter, "it is the discovery of facts, not their legal significance, that starts the statute." (*Jolly,* at p. 1113.)

As the trial court found, Appellant was aware of the underlying November 14, 2011 transaction, at the latest, in 2014 given that her complaint in *Matthews II*, filed in July 2014, contained the Assignment and Appellant alleged she discovered the Assignment in July 2014. Further, Appellant was aware of the circumstances that caused the statute of limitations to run since at least 2007 when she commenced an action against STGC and STCA. As such, the trial court was correct to hold that Appellant's SAC is time-barred on the face of the pleading.[1]

---

[1] The statute of limitations for fraud is three years. (Code Civ. Proc., § 338, subd. (d).) The statute of limitations for Business and Professions section 17200 is four years. (Bus. & Prof. Code, § 17208 ["Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years

### c.  Motion for Judgment on the Pleadings by QLS

As QLS points out, although Appellant's SAC raised seven causes of action, her opening brief focuses on lack of standing to foreclose and slander of title.  For the reasons discussed below, as to both of these causes of action, and Plaintiff's remaining tort claims, the trial court correctly concluded that Appellant could not state any claim against QLS because QLS, as trustee of the Deed of Trust, is subject to statutory privileges.

A nonjudicial foreclosure sale is a creature of statute.  (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 334 (*Kachlon*) ["The Civil Code contains a comprehensive statutory scheme regulating nonjudicial foreclosure."])  The trustee's role in preparing for and conducting the sale is set forth in detail in Civil Code section 2924 et. seq.  "The trustee in nonjudicial foreclosure is not a true trustee with fiduciary duties, but rather a common agent for the trustor and beneficiary."  [Citation.]  The scope and nature of the trustee's duties are exclusively defined by the deed of trust and the governing statutes.  No other common law duties exist.  [Citations.]"  (*Kachlon, supra,* at p. 335.)  In short, the trustee does not contract with the purchaser for the sale of the

---

after the cause of action accrued"].)  The statute of limitations for quiet title and the cancellation of instruments, both of which are premised on allegations of fraud, are also three years.  (Code Civ. Proc., § 338, subd. (d); *see also Walters v. Boosinger* (2016) 2 Cal.App.5th 421, 428 [on a quiet title claim, " 'courts refer to the underlying theory of relief to determine the applicable period of limitations' "].)  The statute of limitations for "lack of standing to foreclose," which we construe as a wrongful foreclosure claim premised on fraud, is three years.  (Code Civ. Proc., § 338, subd. (d).)

16

foreclosed property, but performs ministerial acts which, when properly executed, result in the transfer of title to the purchaser.

In enacting the comprehensive statutory scheme, the Legislature chose to vest trustees performing the statutory foreclosure procedures with a qualified privilege precluding them from liability for actions undertaken within the scope of their statutory duties. To that end, Civil Code section 2924, subdivision (b) provides: "In performing acts required by this article, the trustee shall incur *no liability* for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage." (Italics added.) Thus, when a trustee such as QLS records a Notice of Default or Notice of Trustee's Sale at the direction of the beneficiary, the trustee incurs no tort liability for doing so.

The recording of a notice of sale and notice of default are also privileged. Civil Code section 2924, subdivision (d)(1), provides that "[t]he mailing, publication, and delivery of notices as required" by section 2924 "constitute privileged communications pursuant to Section 47." Section 2924 mandates the recording of both a notice of default and a notice of sale. (Civ. Code, § 2924, subds. (a)(1) & (a)(3).)

Appellant's SAC does not allege that QLS had any role with regard to her loan or property aside from issuing foreclosure notices in its capacity as trustee of the Deed of Trust. Her first cause of action for "lack of standing to foreclose" does not mention QLS by name, and instead generally contends that "Defendants" did not have the power to foreclose. Her second cause of action for fraud takes issue with the content of foreclosure notices issued by QLS. Her third cause of action for slander of title again

17

attempts to state a claim against QLS solely for its recording of a Notice of Default and Notice of Trustee's Sale.

Each of the above actions fall within the scope of QLS's statutory privilege. Civil Code section 47 creates two privileges: (1) an absolute privilege, commonly called the litigation privilege, that applies irrespective of the speaker's motive; and (2) a qualified privilege that "applies only to communications made without malice." (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360, superseded by statute on other grounds.) Civil Code section 2924, subdivision (d), refers only to "Section 47" without specifying which of the two privileges applies. The courts have split on this question. (*Compare Kachlon*, *supra*, 168 Cal.App.4th at pp. 335–341 [Civ. Code, § 2924 incorporates § 47's qualified privilege] with *Garretson v. Post* (2007) 156 Cal.App.4th 1508, 1517 [§ 2924 incorporates § 47's absolute privilege].) We need not take a position on this issue because the publication of documents at issue in this case is privileged even under section 47's narrower qualified privilege.

For the purposes of section 47's qualified privilege, "malice" means that the defendant (1) " 'was motivated by hatred or ill will towards the plaintiff,' " or (2) " 'lacked reasonable grounds for [its] belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights.' " (*Sanborn v. Chronicle Publishing Co.* (1976) 18 Cal.3d 406, 413; *Taus v. Loftus* (2007) 40 Cal.4th 683, 721; Civ. Code, § 48a, subd. (d)(4) [defining "actual malice" as "hatred or ill will toward the plaintiff"].)

The purpose of this privilege is to bar any tort action based on a protected communication when the publication was made without malice. (*Kachlon, supra,* 168 Cal.App.4th at p. 336.)

18

Malice requires that the publication be motivated by hatred or ill will toward the plaintiff or lack of reasonable belief in the truth of the publication. (*Ibid.*)

As the trial court found, Appellant's SAC contains no facts to suggest that QLS recorded the Notices of Default and Sale out of hatred toward Appellant or that QLS had reason to believe that Appellant's loan was not in default. Appellant's conclusory allegation that QLS acted with malice when it "colluded" or "conspired" with SPS to foreclose on the property falls short of this standard.

In her opening brief, Appellant again states in a conclusory fashion that Defendants acted with malice, but she fails to allege facts supporting that contention as to QLS. Appellant's conclusory assertions lacking any factual support cannot support a cause of action that would survive a motion for judgment on the pleadings or demurrer. (*See Curcini v. County of Alameda* (2008) 164 Cal.App.4th 629, 650 [conclusory allegations of malice are insufficient to survive demurrer].) Accordingly, we affirm the judgment granting QLS's Motion for Judgment on the Pleadings.

## DISPOSITION

The court has read and considered the motion for judicial notice. It is ordered that the motion is granted, and the court takes judicial notice of the following documents: (1) The complaint filed on November 7, 2007, entitled *Ethel Matthews v. Infra + Arch Development, Inc., et al.* (Super. Ct, L.A. County No. GC039852) (2007 Action). (2) The request for dismissal filed and entered on March 10, 2008 in the 2007 Action. (3) The FAC filed on May 30, 2008 in the 2007 Action. (4) The complaint filed on June 23, 2010, entitled *Ethel Matthews v. ResMAE Mortgage Corporation, et al.* (Super. Ct., L.A. County, No. GC045473).

19

(5) The complaint filed on July 3, 2014, entitled *Ethel Matthews v. JPMorgan Chase Bank, et al.* (Super. Ct., L.A. County, No. EC062589).

The judgment sustaining the demurrers and granting judgment on the pleadings is affirmed. Costs are awarded to Respondents.

HARUTUNIAN, J.*

We Concur:

STRATTON, P. J.

WILEY, J.

---

\*     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.